GRUENDER, Circuit Judge.
Jesus Perdoma was indicted on one count of possession with intent to distribute fifty grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Perdoma entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress. The district court[1] sentenced Perdoma to 120 months’ imprisonment. Perdoma appeals, and for the following reasons, we affirm.
I. BACKGROUND
On the morning of November 17, 2008, Investigator Alan Eberle of the Nebraska State Patrol (“NSP”) was on duty in plain clothes at a Greyhound bus terminal in Omaha, Nebraska. At approximately 6:00 a.m., Investigator Eberle saw a black SUV pull up to the terminal. Jesus Perdoma exited the vehicle carrying a small bag and walked into the terminal without gesturing to the driver of the vehicle. Eberle decided to follow Perdoma into the terminal.
Perdoma walked to the ticket counter and began speaking with an agent while Investigator Eberle watched from four or five feet away. Eberle overheard Perdoma request a one-way ticket to Des Moines, Iowa, using the name Jesus Cruz. When Perdoma retrieved cash from his wallet to pay for the ticket, Eberle saw a government-issued identification card in the wallet, but he could not read the name on the card. According to Eberle, Perdoma’s hands were shaking and he appeared nervous throughout the transaction.
Investigator Eberle approached Perdoma as he walked away from the ticket counter. Without touching Perdoma, Eberle identified himself as a police officer and asked Perdoma if he would answer a few questions. Eberle assured Perdoma that he was “not under arrest or in any kind of trouble,” and Perdoma agreed to speak with Eberle. In response to Eberle’s questions, Perdoma said that he was on his way from Denver to his home in Des Moines and that he had arrived at the terminal by cab.
*748 During the brief conversation, Investigator Eberle smelled the odor of marijuana emanating from Perdoma. Eberle asked to see Perdoma’s identification, but Perdoma claimed that he did not have any identification with him. Having already seen a form of government identification in Perdoma’s wallet, Eberle then asked to see Perdoma’s wallet. As Perdoma reached for his wallet, he was breathing rapidly, trembling, and looking around the terminal. Based on Perdoma’s answers, his nervous behavior, and the smell of marijuana, Investigator Eberle suspected that Perdoma was engaged in criminal activity.
Perdoma paused after taking the wallet out of his pocket. Instead of handing the wallet to Eberle, Perdoma put it back in his pocket and ran. Investigator Eberle ordered him to stop and grabbed his jacket, but Perdoma continued running. After a brief chase, Eberle and NSP Investigator Scott, who was also on duty at the bus terminal that morning, wrestled Perdoma to the ground and placed him under arrest. The officers handcuffed Perdoma and escorted him to an area at the rear of the terminal. Investigator Eberle searched Perdoma and discovered approximately four grams of marijuana in the coin pocket of Perdoma’s pants. Meanwhile, Investigator Scott found approximately 454 grams (one pound) of methamphetamine in Perdoma’s bag.
A federal grand jury returned an indictment charging Perdoma with one count of possession with intent to distribute fifty grams or more of a substance containing methamphetamine. Perdoma moved to suppress the methamphetamine found in his bag, arguing that his initial encounter with Investigator Eberle was not consensual, that the officers had no basis to detain him, and that the warrantless search of his bag was not a valid search incident to arrest. After conducting a suppression hearing, the magistrate judge[2] recommended denying Perdoma’s motion, concluding that Investigator Eberle acted properly in approaching, detaining, and arresting Perdoma. The magistrate judge also recommended upholding the search of Perdoma’s bag, because “[t]he right to conduct such a search incident to arrest is absolute.” After reviewing Perdoma’s objections to the magistrate judge’s report and recommendation, the district court rejected the magistrate judge’s reasoning that the search incident to arrest exception was absolute and held that, after Arizona v. Gant, 556 U.S.-, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search incident to arrest exception “cannot legitimize a warrantless search in the absence of a need to protect officers and safeguard evidence.” Nevertheless, the district court concluded that the search was valid under Gant because, given the discovery of marijuana in Perdoma’s pocket, “it was reasonable for the officer to believe the defendant’s bag would contain evidence of a drug crime.” Accordingly, the district court denied Perdoma’s motion to suppress.
II. DISCUSSION
“We examine the factual findings underlying the district court’s denial of [a] motion to suppress for clear error,” United States v. Williams, 577 F.3d 878, 880 (8th Cir.2009) (quoting United States v. Walsh, 299 F.3d 729, 730 (8th Cir.2002)), and we review the district court’s “legal conclusions about probable cause and reasonable suspicion de novo,” United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th *749 Cir.2007) (citing United States v. Washington, 455 F.3d 824, 826 (8th Cir.2006)).
Perdoma first argues that his initial encounter with Investigator Eberle was not consensual and that he was therefore unlawfully seized. We disagree. “[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.” Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). “So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.” Id. (internal citation and quotation marks omitted). Here, Investigator Eberle approached Perdoma and identified himself as a police officer. Without touching Perdoma or displaying a weapon, Eberle told Perdoma that he was not under arrest and asked him if he would answer a few questions. Nothing about this initial encounter would have caused a reasonable person in Perdoma’s situation to believe that he was not free to disregard Eberle’s questions and walk away. See United States v. Mendoza-Cepeda, 250 F.3d 626, 628 (8th Cir.2001) (concluding that the defendant’s encounter with the police was consensual because “only two officers ... were present, no weapon was displayed, [the defendant] was not physically touched until after he consented to the touching of his torso, and the language used by [the approaching officer did] not indicate that [the defendant’s] compliance was compelled”).
Perdoma also argues that Investigator Eberle had no legal basis for arresting him. Again, we disagree. Although the initial encounter was consensual, Eberle had probable cause to arrest Perdoma for marijuana possession once he detected the odor of marijuana emanating from Perdoma.[3] See United States v. Humphries, 372 F.3d 653, 659-60 (4th Cir. 2004) (holding that “if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana” and thus has “authority to arrest him without a warrant in a public place”). Perdoma contends that his possession of less than one ounce of marijuana was merely an “infraction” under Nebraska law, see Neb.Rev.Stat. § 28-416(13), and that the arrest was therefore invalid. Whether the offense was an infraction or a misdemeanor is irrelevant, however, because “ ‘if an arrest is otherwise reasonable, the fact that it is not for an “arrestable” offense [under state law] does not make it unconstitutional.’ ” See United States v. Burtton, 599 F.3d 823, 830 (8th Cir.2010) (quoting Thomas v. City of Peona, 580 F.3d 633, 637 (7th Cir.2009)) (upholding an arrest for an infraction under Nebraska law); see also Virginia v. Moore, 553 U.S. 164, 176, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (‘We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment’s protections.”). Because Eberle had probable cause to believe that Perdoma possessed marijuana in violation of Nebraska *750 law, we conclude that the arrest did not violate the Fourth Amendment.
Finally, Perdoma argues that Investigator Scott’s warrantless search of his bag was not justified under any exception to the warrant requirement. The Government asserts that the search of the bag was a valid search incident to arrest. “[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Arizona v. Gant, 556 U.S. -, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). “Among the exceptions to the warrant requirement is a search incident to a lawful arrest.” Id. A search incident to arrest may lawfully extend to “the arrestee’s person and the area within his immediate control,” that is, “the area into which an arrestee might reach in order to grab a weapon or evidentiary items.” Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (internal quotation marks omitted). This exception “derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.” Gant, 129 S.Ct. at 1716.
The crux of Perdoma’s argument is that during the search, the bag was “beyond his reach” because he was restrained and a police officer had taken control of the bag. Whether an officer has exclusive control of a seized item does not, however, necessarily determine whether the item remains in “the area from within which [the arrestee] might gain possession of a weapon or destructible evidence.” Chimel, 395 U.S. at 763, 89 S.Ct. 2034 (emphasis added). Accordingly, we have rejected the notion that an officer’s exclusive control of an item necessarily removes the item from the arrestee’s area of immediate control. See United States v. Morales, 923 F.2d 621, 626-27 (8th Cir.1991) (rejecting the defendant’s argument that the search of his bags, performed while the defendant was held spread-eagled against a wall three feet away by another officer, was improper because the police had gained “exclusive control” over the bags, explaining that “under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee’s person, an officer may be said to have reduced that article to his ‘exclusive control’ ” (quoting New York v. Belton, 453 U.S. 454, 461-62 n. 5, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981))); United States v. Mefford, 658 F.2d 588, 591-93 (8th Cir. 1981) (upholding the search of the defendant’s paper bag as a search incident to arrest because the bag remained in the area within the defendant’s immediate control even though the arresting officer held the bag during the search); see also United States v. Tejada, 524 F.3d 809, 812 (7th Cir.2008) (noting that the defendant was “unlikely to be able to make a successful lunge for the entertainment center” while he was “[h]andcuffed, lying face down on the floor, and surrounded by the police,” but nonetheless holding that the search of the entertainment center incident to arrest was valid because “the police did not know how strong he was, and he seemed desperate”); United States v. Horne, 4 F.3d 579, 586-87 (8th Cir.1993) (upholding a search of furniture that occurred after the defendant and the only other person in the room had been handcuffed, because the arresting officer “could reasonably have believed that weapons were within reach of the hand-cuffed detainees”). Here, the record suggests that the search of the bag occurred in close proximity to where Perdoma was restrained, in the rear area beyond *751 the ticket counter of the bus terminal. Moreover, Perdoma had already run from the officers once, and the officers did not know how strong he was. Under these circumstances, the bag was within “the area into which [the] arrestee might reach in order to grab a weapon or evidentiary items.” Chimel, 395 U.S. at 763, 89 S.Ct. 2034.[4]
Perdoma also couples his references to being restrained and “in custody” with a general citation to Gant, in which the Supreme Court held that a warrantless search of a vehicle incident to a recent occupant’s arrest is justified only when the arrestee is “unsecured.” 129 S.Ct. at 1719. Reading Perdoma’s argument generously, he appears to assert that he was “secured” in the bus terminal during the search of his bag in a matter that calls for application of the Gant standard for a warrantless search of a motor vehicle incident to an arrest. While the explanation in Gant of the rationale for searches incident to arrest may prove to be instructive outside the vehicle-search context in some cases, we agree with the Government that this is not such a case.
In Gant, police officers arrested the defendant at the end of a private driveway after he stepped out of his vehicle, placed him in handcuffs, and locked him in the back seat of a patrol car. Id. at 1715. With the defendant thus secured, the officers searched the defendant’s vehicle and discovered contraband. Id. The Supreme Court ruled that the search-incident-to-arrest exception did not justify the warrant-less search of the vehicle. In so doing, the Court rejected the previously “widely understood” rule of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that a vehicle search incident to the arrest of a recent occupant is a valid exception to the warrant requirement “even if there is no possibility the arrestee could gain access to the vehicle at the time of the search.” Gant, 129 S.Ct. at 1718.
In lieu of the rejected Belton rule, the Court relied on the general search-incident-to-arrest principles of Chimel, under which law enforcement officers may conduct a search incident to arrest “of the arrestee’s person and the area within his immediate control,” that is, “the area into which an arrestee might reach in order to grab a weapon or evidentiary items.” 395 U.S. at 763, 89 S.Ct. 2034 (internal quotation marks omitted). Applying these principles in Gant, the Court explained that “[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the seareh-incident-to-arrest exception are absent and the rule does not apply.” Gant, 129 S.Ct. at 1716. The Court concluded that, in the vehicle-search context, “the Chimel rationale authorizes police to search a vehicle incident to a recent occupant’s arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.” Id. at 1719.
Perdoma has not meaningfully argued, on appeal or before the district court, how the circumstances of his arrest in a public bus terminal rendered him “secured” and out of reaching distance of his bag in a manner analogous to the circumstances in Gant.[5] Therefore, we need not contemplate *752 here to what extent Gant has application beyond the context of vehicle searches. See United States v. Kirkland, 567 F.3d 316, 322 (7th Cir.2009) (“[I]t is defense counsel’s job to develop suppression arguments in a meaningful way so that the government has an adequate opportunity to respond and the district court to make an informed decision.” (citing United States v. Pope, 467 F.3d 912, 919 (5th Cir.2006))), cert. denied, 558 U.S.-, 130 S.Ct. 1120, — L.Ed.2d- (2010); see also United States v. Stanko, 491 F.3d 408, 415 (8th Cir.2007) (refusing to address a claim not meaningfully developed on appeal).
The dissent would hold that an arrestee who is restrained in some fashion by law enforcement necessarily is secured (as contemplated by Gant) such that a warrant-less search incident to arrest of luggage in the arrestee’s immediate area can never be justified. Gant does not support this logic. After stating the general rule that a warrantless search is not justified “[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search,” 129 S.Ct. at 1716, Gant elaborates upon the circumstances in which an arrestee no longer has the possibility to reach into the “passenger compartment” of his vehicle, and the Court’s discussion of whether the arrestee is no longer “unsecured and within reaching distance” of that area must be understood in that limited context, id. at 1719. The Court focuses exclusively on how the rule will affect vehicle searches, stating, for example:
Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee’s vehicle remains. Cf. 3 W. LaFave, Search and Seizure § 7.1(c), p. 525 (4th ed.2004) (hereinafter La-Fave) (noting that the availability of protective measures “ensur[es] the nonexistence of circumstances in which the arrestee’s ‘control’ of the car is in doubt”).
Id. at 1719 n. 4 (emphases added).
The potential pitfalls of the dissent’s approach are aptly illustrated by a comparison of Gant to the instant case. The defendant in Gant parked at the end of a private driveway and was arrested, hand *753 cuffed, and locked in the back of a patrol car before his vehicle was searched. “Under those circumstances, Gant clearly was not within reaching distance of his car at the time of the search.” Id. at 1719. By contrast, here the record suggests that Perdoma was held in close proximity to his bag while it was searched. E.g., Suppression Hr’g Tr. 38-89 (stating that Perdoma and the bag both immediately were moved to a “back area” or “back room” to the “rear of the ticket counter,” and that one officer’s spoken question to Perdoma was audible to, and answered by, an officer simultaneously conducting the search of the bag).[6] Given our repeated recognition in the non-vehicle search-incident-to-arrest context that it may be possible for an arrestee restrained in a room to reach items in that room, and without any argument as to why the Supreme Court’s reasoning with respect to reaching into a vehicle in Gant should control in Perdoma’s circumstances, we cannot say that the simple fact of Perdoma’s arrest and restraint left Perdoma “clearly ... not within reaching distance of his [bag] at the time of the search.” Gant, 129 S.Ct. at 1719.
Having rejected Perdoma’s challenges to the search of his bag, we conclude that the search was a valid search incident to arrest. See Chimel, 395 U.S. at 763, 89 S.Ct. 2034.[7]
III. CONCLUSION
For the foregoing reasons, we affirm the district court’s denial of Perdoma’s motion to suppress.

. The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

. The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

. Because an arresting officer's “subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis,” see United States v. Sledge, 460 F.3d 963, 967 n. 3 (8th Cir.2006) (quoting Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)), it does not matter that Eberle did not identify marijuana possession as the basis for arresting Perdoma. "The relevant inquiry is whether probable cause existed to arrest [the defendant] for some crime, and here we answer that question in the affirmative.” Id.

. Perdoma also argues that evidence from the search of his person could not justify the contemporaneous search of his bag, and that "[t]he doctrine of inevitable discovery is likewise unavailing.” Because we find that the search was justified as a search incident to an arrest, we need not consider those issues.

. Given an opportunity by the district court to file a supplemental brief on the effect of Gant on his motion to suppress, Perdoma merely *752 stated that there was no possibility that he could reach the bag because police officers "had taken the bag from him,” and stated that Gant should be more, not less, relevant outside the vehicle context because of a lesser expectation of privacy in a vehicle. Def.'s Supplemental Br. Supp. Objections Magistrate's Report & Recommendation at 2-3, Clerk's R. at 39-40.
On appeal, the entirety of Perdoma's argument that the search of the bag was not a proper search incident to his arrest consists of the following two statements:
The officers' warrantless search of Mr. Perdoma’s carry-on bag executed after he was restrained and the bag was beyond his reach was unlawful and unjustifiable as a search on any lawful basis.
Br. Appellant at 8.
The trial court correctly found that that [sic] officers' warrantless search of Mr. Perdoma’s carry-on bag was not justified as a search incident to arrest. Gant v. Arizona [sic], based on Chimel v. California, holds that a search incident to arrest may include only the arrestee's person and the area "within his immediate control”, meaning the area from which the arrestee might gain possession of a weapon, or destructible evidence. The moment that Eberle and other officers tackled Mr. Perdoma to the floor, Mr. Perdoma was "in custody.” Officers took Mr. Perdoma and his carry-on bag to a rear area of the bus terminal. Because officers took the bag from him, Mr. Perdoma could not gain possession of its contents.
Br. Appellant at 15-16 (internal citations omitted).

. Moreover, in Gant, the only other two individuals in the area already had been secured in separate patrol cars. 129 S.Ct. at 1715. Perdoma's arrest and search occurred in a public bus terminal with at least twenty to thirty other people moving freely inside (Suppression Hr'g Tr. at 16), a situation not present in Gant.

. The dissent makes much of the fact that Perdoma’s Gant argument was, in part, persuasive to the district court. However, the district court never addressed the core question of whether it was possible for Perdoma to access the bag during the search. Addressing the magistrate judge's ruling that "[t]he right to conduct such a search incident to arrest is absolute and not determinative of any concern for officer safety or destruction of evidence,” the district court stated, “[T]he magistrate judge’s reliance on the 'search incident to arrest' exception ... is erroneous and contrary to law. Post-Ganf, the 'search incident to arrest’ exception cannot legitimize a warrantless search in the absence of a need to protect officers and safeguard evidence.” Rather than discussing whether Perdoma was able to access the bag during the search, however, the district court instead found the search valid on an alternate ground, concluding that the officers could reasonably believe that "further evidence of a drug offense would be found in [Perdoma’s] bag.” See Gant, 129 S.Ct. at 1719 (holding that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle’ ” (quoting Thornton v. United States, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, X, concurring))). We read the district court’s memorandum and order simply as correctly recognizing that after Gant, the magistrate judge's initial ruling that "[t]he right to conduct such a search incident to arrest is absolute” could no longer stand.
We note that because the search of a bag in a bus terminal does not involve "circumstances unique to the vehicle context,” the Supreme Court's holding in Gant that police may search an arrestee's vehicle for "evidence relevant to the crime of arrest” does not apply to the search of Perdoma's bag, and the district court’s ruling on this alternate ground cannot be affirmed. Gant, 129 S.Ct. at 1719.