BLACKBURNE-RIGSBY, Associate Judge:
Following a jury trial, appellant Thomas Butler was convicted of two counts of unlawful possession of a controlled substance (marijuana and amphetamine), in violation of D.C.Code § 48-904.01(d) (2012 Repl.).[1] On appeal, appellant argues that the trial court erred in denying his motion to suppress the drugs found on his person because the police lacked probable cause to arrest him and could not search him incident to arrest based solely on the smell of marijuana emanating from his vehicle. Citing primarily Minnick v. United States, 607 A.2d 519 (D.C.1992), the government argues that the identifiable aroma of a drug by itself provides probable cause to arrest and search an individual. While we are not persuaded by the government’s argument, and recognize that with the passage of the Marijuana Possession Decriminalization Amendment Act of 2014, effective July 17, 2014, see D.C. Council, Act 20-305 (Mar. 31, 2014), the calculus of probable cause in future cases such as this may change, we nonetheless conclude— albeit not without some pause — that the arrest and subsequent search of appellant in this case was not unconstitutional. Accordingly, we affirm.
I. Factual Background
At the suppression hearing, Metropolitan Police Department Officer David Boar-man testified that at approximately 7:09 p.m. on April 21, 2010, he was driving his marked patrol vehicle on the 2300 block of Benning Road, Northeast, Washington, *738 D.C., when he noticed broken rear brake lights on the vehicle that appellant was driving, and subsequently initiated a traffic stop. The officer approached the passenger side of the vehicle, advised appellant of the reason for the traffic stop, and asked for his license, registration, and proof of insurance. During this interaction in which the passenger side window was lowered, Officer Boarman, who has been exposed to marijuana several hundred times, identified the strong odor of “fresh” marijuana coming from inside the vehicle. When the officer informed appellant of the smell, appellant, who was alone, replied: “Man, you don’t smell no weed in here”; “Man, you can search the vehicle”; and “You can smell my fingers if you want to.” In response, Officer Boarman asked appellant to step outside of the vehicle, brought him to the back of the vehicle, and “started conducting a search of him.”
During this search, the officer in addition detected the smell of marijuana emanating from appellant’s clothing — most notably his jacket — to which appellant claimed that he did not own the jacket, and that the person who owned the jacket had been smoking. When the officer pulled up appellant’s left pant leg, he saw wedged between the sock and shoe a clear plastic bag containing a quantity of pills (later identified as amphetamine) and directly underneath, another clear bag, containing a “brown, green, weed-like substance,” which field tested positive for marijuana. Following this search, Officer Boarman handcuffed appellant and searched the vehicle for more drugs, although none was ultimately found. On cross-examination, Officer Boarman confirmed that the smell of marijuana may “linger” in a closed space, and that it was “possible” any clothing confined in the closed space will then smell like marijuana.[2]
During arguments on the motion to suppress, the government maintained that the search was lawful on the basis that “[u]n-der well-established D.C. law, the plain smell of narcotics provides probable cause to conduct a search of a defendant’s person, [and] that’s what occurred here.” When the trial court asked if the government “reified] at all on the issue of consent,” the government said “[n]o.” Appellant’s trial counsel retorted that the cases he read “all had to do with searching the car and not ... the person[,]” and that this court had not “reached [a decision] [o]n searchfing] [ ] a person [based] on probable cause just from a smell.” The trial court credited Officer Boarman’s testimony and denied appellant’s motion on two grounds. First, the .officer “had probable cause to conduct the search” of appellant’s person based on “the smelling of the marijuana coming from the vehicle” and “the marijuana continuing to emanate from the defendant himself.”[3] Second, when appellant told the officer that he could search the car, “as far as this [c]ourt is concerned, that was consent to search the defendant and to search the car.”[4] Appellant’s case *739 proceeded to trial, where he was found guilty of two counts of possession. This appeal followed.
II. Discussion
On appeal, appellant argues that the trial court should have suppressed the drugs found on his person because the police lacked probable cause to arrest him, and conducted an evidentiary search in violation of the Fourth Amendment.[5] Abandoning its position in the trial court that the smell of marijuana provided probable cause to search appellant’s person, the government now argues on appeal that the smell of marijuana alone provides probable cause to arrest appellant, which then gave the police authority to search him under the search-incident-to-arrest exception.
A Standard of Review
In reviewing the denial of a motion to suppress, this court must uphold the trial court’s findings of fact unless clearly erroneous and view all facts and reasonable inferences in the light most favorable to the government. See Prince v. United States, 825 A.2d 928, 981 (D.C.2003). However, we make a de novo, “independent determination of whether there ... was probable cause to arrest.” Shelton v. United States, 929 A.2d 420, 423 (D.C.2007). The government bears the burden of establishing probable cause. See Brown v. United States, 590 A.2d 1008, 1013 (D.C.1991). Thus, if the evidence fails to demonstrate probable cause to arrest at the time of the search, the seized contraband is suppressed “as the product of an unreasonable search and seizure in violation of the Fourth Amendment.” Shelton, supra, 929 A.2d at 423. That said, “[a] search incident to arrest may precede the actual arrest if probable cause exists, independent of the search, to justify the arrest, and if the arrest follows ‘quickly on the heels’ of the search.”[6] Millet v. United States, 977 A.2d 932, 935 (D.C.2009).
Probable cause to arrest “exists where the facts and circumstances within the police officers’ knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man or woman of reasonable caution in the belief that an offense has been or is being committed.” Spinner v. United States, 618 A.2d 176, 178 (D.C.1992) (citation, internal quotation marks, and other punctuation omitted). “To this it is added that probable cause must be ‘particularized’ with respect to the person to be *740 searched or seized.” Perkins v. United States, 936 A.2d 303, 306 (D.C.2007). While “it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause[,]” id. (quoting Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d, 527 (1983)), in evaluating whether this standard has been met, we keep in mind the fundamental principle that “[t]he history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would ‘leave law-abiding citizens at the mercy of the officers’ whim or caprice.” Wong Sun v. United States, 371 U.S. 471, 483, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

B. Probable Cause to Arrest versus Probable Cause to Search

Preliminarily, we address the government’s argument that this court has previously already held that the identifiable smell of a drug by itself provides probable cause to arrest and search an individual. In support of this claim, the government cites to our decisions in Wilson v. United States, 802 A.2d 367 (D.C.2002) and Min-nick. Plainly, Wilson is not on all fours because the police in that case detected “a really strong odor of PCP” and saw tin foils consistent with PCP packaging before arresting the suspects for possession. Id. at 372. Likewise, Minnick's holding pertained to a related but ultimately different inquiry, i.e., “that a police officer who smells the identifiable aroma of contraband drug emanating from a car has probable cause to believe that the car contains a quantity of that drug[,]” 607 A.2d at 525, and can thus search the car and any containers therein under the automobile exception to the warrant requirement.[7]
Nor is our decision here in the probable cause to arrest context automatically required by Minnick’s holding regarding probable cause to search, even if it is persuasive authority regarding a search. Despite their shared origins, probable cause to arrest and probable cause to search present different questions and have a different emphasis. See United States v. Gilliam, 334 U.S.App.D.C. 391, 396, 167 F.3d 628, 633 (1999). Indeed, other courts considering exactly this issue have concluded that the two inquiries are distinct.[8] While generally the same “quantum of evidence” is required for either inquiry, see, e.g., Greene v. Reeves, 80 F.3d 1101, 1106 (6th Cir.1996), “[e]ach requires a showing of probabilities as to somewhat different facts and circumstances — a point seldom made explicit in the appellate cases.” 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.1(b), at 6-7 (5th ed.2012). “Probable cause to search exists where in view of the ‘totality of the circumstances,’ *741 ‘there is a fair probability that contraband or evidence of a crime will be found in a particular place.’” Gilliam, supra, 334 U.S.App.D.C. at 396, 167 F.3d at 633 (quoting Gates, supra, 462 U.S. at 239, 103 S.Ct. 2317). Contrastingly, the inquiry for probable cause to arrest is whether “ ‘the facts and circumstances’ within a law enforcement officer’s knowledge are ‘sufficient to warrant a prudent [police officer] in believing that [the suspects] had committed or [were] committing an offense.’ ” Id. (alteration in original) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); see also Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). “This distinction is a critical one ... [and] there may be probable cause to search without probable cause to arrest, and vice-versa.” 2 La-Fave, Search and Seizure § 3.1(b) at 12.
Consequently, unlike in Minnick, the legality of the search in this case cannot simply turn on whether the officer identified the smell of marijuana “generally” emanating from appellant’s vehicle— which indisputably would allow the police to search the vehicle for contraband — but rather on whether the facts and circumstances within Officer Boarman’s knowledge at the time gave him “reasonable grounds to believe ... that a felony ha[d] been committed by the person to be arrested[,]” id. at 9, i.e., a particularized belief that appellant committed a drug-related crime at the time of arrest and search. While we do not dispute that “in appropriate circumstances, odor may serve as the basis or the principal basis for probable cause to arrest[,] ... the officer [must] be able to link the unmistakable odor of marijuana ... to a specific person or persons] The linkage must be reasonable and capable of articulation.” Secrist, supra note 8, 589 N.W.2d at 394 (citations omitted).

C. The Probable Cause to Arrest Inquiry

Here, if the government had presented only evidence that the officer smelled marijuana generally emanating from appellant’s vehicle, we would have reservations in upholding the legality of appellant’s subsequent arrest and search. See, e.g., Reed, supra note 8, 712 So.2d at 460 (“[H]ad the smell emanated solely from the [marijuana-laced] cigar[,] ... the search of [appellant’s] person would have rested on perilous probable cause grounds.”).[9] However, there were two additional factors in this case that provided Officer Boarman with sufficient particularized justification to arrest appellant for a drug offense and search him incident thereto. First, appellant was the sole occupant of the vehicle, thus making it more likely that any marijuana present was either on his person or within his exclusive control. See, e.g., Rucker v. United States, 455 A.2d 889, 891 (D.C.1983) (“An individual has constructive possession of narcotics when he is knowingly in a position to or has a right to exercise dominion and control over them, either directly or through others.”). Second, Officer Boarman testified that — based on his extensive experience in detecting marijuana — the aroma was of fresh marijuana. In our view, this makes it more likely that appellant was presently in possession of marijuana.[10] *742 See, e.g., Perkins, supra, 936 A.2d at 306 (analogizing the probable cause standard to the “reasonable probability'’ standard). We find persuasive the Wisconsin Supreme Court’s reasoning in Secrist: “The strong odor of marijuana in an automobile will normally provide probable cause to believe that the driver and sole occupant of the vehicle is linked to the drug. The probability diminishes if the odor is not strong or recent, if the source of the odor is not near the person, if there are several people in the vehicle, or if a person offers a reasonable explanation for the odor.” 589 N.W.2d at 395. For these reasons, Officer Boatman had probable cause to reasonably believe that appellant had committed a drug-related offense at the time of the arrest and search.
III. Conclusion
Accordingly, the arrest of appellant and search incident thereto was lawful, and the trial court did not err in denying appellant’s motion to suppress. Appellant’s convictions are hereby

Affirmed.

. Appellant was initially indicted with one count of possession with intent to distribute amphetamine, see D.C.Code § 48-904.01(a)(1), but the jury found him guilty of the lesser-included offense of possession.

.Appellant testified on his own behalf. His testimony was mostly consistent with Officer Boatman's, except he insisted that his brake lights were working and he denied giving the officer permission to search his vehicle. He also testified that the sealed plastic bag was located under his foot, not merely wedged between his sock and shoe, and that the officer had to take his shoe off to find it.

. Neither the government nor the trial court specified what exception to the Fourth Amendment permitted the search under this theory. See Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

. This theory, which the government did not argue in the trial court and has not argued on appeal, is foreclosed by the Supreme Court’s decision in Florida v. Jimeno, 500 U.S. 248, *739 252, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents.”).

. The Fourth Amendment guarantees *'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV.

. Appellant appears to challenge our case law holding that an officer may first search a suspect before arresting him or her by contending that "a fiction is created that [the officer] ha[s] arrested a person when they search him.” However, as stated above, a search may precede an actual arrest only when there is probable cause to arrest at the time of the search and an arrest follows “quickly on the heels” of the search. Therefore, contrary to appellant’s claim, our case law does not approve — and indeed actively guards against — "fishing expeditions” for contraband. Notably, in a recent decision by this court, United States v. Nash, 100 A.3d 157, 168 (D.C.2014), we confirmed that a search incident to arrest is lawful even if, at the time of the search, the police had not yet arrested the suspect and did not subjectively intend to do so. Contrary to our dissenting colleague's view, the majority is in accord with Nash’s holding and reasoning for doing so.

. While the court in Minnick did note in a footnote that the search "may also be sustained as incident to a lawful arrest[,]” 607 A.2d at 525, this observation was "unnecessary to our affirmance of the conviction,” see Heard v. United States, 121 U.S.App.D.C. 37, 38, 348 F.2d 43, 44 n. 3 (1964), and therefore dictum. See, e.g., Parker v. K & L Gates, LLP, 76 A.3d 859, 873 (D.C.2013) ("[F]or purposes of binding precedent, a holding is a narrow concept, a statement of the outcome accompanied by one or more legal steps or conclusions along the way that — as this court and others have repeatedly held — are ‘necessary’ to explain the outcome; other observations are dicta.").

. See State v. Reed, 712 So.2d 458, 460 (Fla.1998) (noting the difference between a probable cause to arrest and probable cause to search analysis); Edmond v. State, 951 N.E.2d 585, 591 (Ind.App.Ct.2011) (same); State v. Secrist, 224 Wis.2d 201, 589 N.W.2d 387, 391 (1999) (same).

. The fact that appellant’s jacket also smelled of marijuana does not factor into our probable cause calculus because the officer noticed the smell only after the search had already begun. See Millet, supra, 977 A.2d at 935 ("A search incident to arrest may precede the actual arrest if probable cause exists, independent of the search, to justify the arrest .... ” (emphasis added)).

. That being said, we take no position on whether or not probable cause to arrest *742 would have existed in this case if the aroma was of burnt, rather than fresh, marijuana.