**IN THE COURT OF APPEALS OF IOWA**

No. 15-0616
Filed September 28, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANTONIO RAYSHAUN EVANS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David F. Staudt (motion to suppress) and Todd A. Geer (trial), Judges.

        Antonio Evans appeals the denial of his motion to suppress and subsequent drug-related convictions. **AFFIRMED.**

        Roger L. Sutton of Sutton Law Office, Charles City, for appellant.

        Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Antonio Evans was convicted of possession of cocaine with intent to deliver, a drug tax stamp violation, and possession of marijuana. He contends the two searches of his person followed by the detention and strip search that led to the discovery of drugs were unconstitutional and the evidence should have been suppressed. We conclude that only the challenge to the legality of the strip search was preserved on appeal and find it a lawful search incident to arrest. Therefore, we affirm the district court's denial of Evans' motion to suppress.

**I. Background Facts and Proceedings.**

On July 28, 2014, Antonio Evans was a passenger in a vehicle pulled over by Officers Nissen and Sullivan. Officer Nissen recognized the vehicle's occupants and knew the driver, Chantelle Bentley, had a revoked license. Also, while off duty two days prior, Officer Nissen had observed Evans driving— knowing Evans was without a valid license—and reported the incident to police dispatch at that time.

Bentley and Evans' vehicle pulled over twenty seconds after the officers, in an unmarked car, activated their lights and initiated the traffic stop. Officer Sullivan approached the vehicle on the driver's side to talk with Bentley, and Officer Nissen approached Evans on the passenger's side. Officer Nissen immediately noticed the odor of burnt marijuana and Evans' watery, glassy eyes. Officer Nissen asked Evans about the smell, and Evans admitted to smoking marijuana earlier in the evening.

Based on the marijuana smell and Evans' comments, Officer Nissen had Evans exit the vehicle to perform a search of Evans' person. Another officer

searched the vehicle and found no drugs or drug paraphernalia. During this first pat-down of Evans, Officer Nissen found nearly $700. Officer Nissen also noticed the strong smell of fresh marijuana emanating from below Evans' waistline and that Evans clenched his buttocks during part of the pat-down search. Another officer on the scene described the search:

> It was—like he [Officer Nissen] was wafting the waistline of his [Evans] pants, pulling them up and down. . . . As Officer Nissen was messing with the pants of Mr. Evans, I detected a very strong odor of unsmoked, raw marijuana coming from the waistline of Mr. Evans.

Because of the smell and Evans' behavior, Officer Nissen believed Evans had marijuana hidden in his buttocks or crotch region and performed another pat-down search. Still no drugs were found. At some point, Evans was handcuffed and read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

Officer Nissen placed Evans, still handcuffed, in the back of the police car and sat next to him on the ride back to the police station. Officer Nissen testified that he told Evans he was being detained but "was not under arrest." Instead, he "detained" Evans in order to go "down to the station for a strip-search." At the station, Officer Nissen asked permission to conduct a strip search of Evans and a superior officer granted authorization. When Evans was asked to remove his underwear, he told the officer, "You got me." The search within Evans' buttocks area revealed a plastic bag containing crack cocaine and marijuana.

Evans was charged with possession of cocaine with intent to deliver, in violation of Iowa Code section 124.401(1)(c) (2013); failure to affix a drug tax

stamp, in violation of section 453B.12; and possession of marijuana, in violation of section 124.401(5).

Evans filed a motion to suppress, which was denied after a hearing. The court found Officer Nissen had probable cause to place Evans under arrest prior to the strip search.

Evans' case proceeded to a jury trial. He was found guilty as charged and was sentenced to a term of incarceration not to exceed thirty-one years.

On appeal, Evans asserts the traffic stop and searches of his person were unconstitutional. He claims that any evidence resulting from the stop and searches was illegally obtained because there was no search warrant or arrest and no probable cause or exigent circumstances to justify a warrantless search.

## II. Scope of Review.

Because Evans' challenge implicates his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution, our review is de novo. *State v. Heminover*, 619 N.W.2d 353, 356 (Iowa 2000).

This review requires us to independently evaluate the totality of the circumstances shown by the record. *State v. Lowe*, 812 N.W.2d 554, 566 (2012). Here, we consider both the evidence at the suppression hearing and the evidence at trial. *See State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005). "We are not bound by the district court's determinations, but we may give deference to its credibility findings." *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001).

**III. Error Preservation.**

The State argues Evans failed to preserve his challenge to the traffic stop and on-scene searches of Evans' person. We agree Evans' challenges to the "stop" and "double search" were not preserved for appeal. While these issues were raised before the district court, the court did not rule on these issues. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised *and decided* by the district court before we will decide them on appeal." (emphasis added)); *see also Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (explaining error preservation allows the district court to avoid or correct an error and provides this court with an adequate record to review the errors purportedly committed); *State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003). Evans did not seek an expanded ruling to address the legality of the stop and on-scene searches. *See Meier*, 641 N.W.2d at 537-38. Therefore, the challenges to the stop and on-scene searches are waived. *See Pickett*, 671 N.W.2d at 869 ("[I]t is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable." (citation omitted)).

Consequently, our review is confined to the legality of the strip search subsequent to Evans' detention.

The State also argues Evans failed to preserve his challenge to the strip search under article I, section 8 of the Iowa Constitution because he failed to cite the specific provision and the district court did not rule on it. We find this unpersuasive. "When there are parallel constitutional provisions in the federal

and state constitutions and a party does not indicate the specific constitutional basis, we regard both federal and state constitutional claims as preserved." *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011) (citations omitted). Because the district court's ruling, though sparse, indicates the court considered and ruled on the constitutional claim, we conclude Evans preserved his challenge under the Iowa Constitution. *See id.*

**IV. Discussion.**

The issue before this court is whether the strip search of Evans violated his constitutional right to be free from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. Evans does not challenge the manner of the strip search but rather whether an exception to the warrant requirement existed. The search and seizure clause of the Iowa Constitution and the language of the Fourth Amendment are nearly identical, so cases interpreting the Fourth Amendment are persuasive on interpretations of the Iowa Constitution. *State v. Hoskins*, 711 N.W.2d 720, 725 (Iowa 2006).

Any search conducted without a valid search warrant is per se unreasonable unless an established exception to the warrant requirement exists. *State v. McGrane*, 733 N.W.2d 671, 676 (Iowa 2007). Exceptions include: (1) a consent search; (2) a search based on probable cause and exigent circumstances; (3) a search of items in plain view; and (4) a search incident to a lawful arrest. *Naujoks*, 637 N.W.2d at 107. The State must prove by a preponderance of the evidence whether an exception applies. *Id.* Any evidence obtained that violates the federal or state constitutional provisions against

unreasonable searches and seizures is inadmissible. *State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008).

*Search Incident to Arrest.* Here, the State claims the search at the police department was a lawful search incident to arrest in order to preserve evidence.[1] The search-incident-to-arrest exception to the warrant requirement allows a police officer "to search a lawfully arrested individual's person." *United States v. O'Connell*, 408 F. Supp. 2d 712, 723 (N.D. Iowa 2005). Evans contends the search-incident-to-arrest exception is inapplicable because he was detained, not arrested.

Our legislature has defined arrest as "the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5. The manner of arrest requires,

> A person making an arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so.

*Id.* § 804.14.

When an officer exceeds the scope of an investigatory stop, the detention may transform the initial stop into an arrest. *State v. Bradford*, 620 N.W.2d 503, 506 (Iowa 2000); *see Centanni v. Eight Unknown Officers*, 15 F.3d 587, 590-91

---

[1] Alternatively, the State defends the search on grounds that it was based upon probable cause and exigent circumstances. This exception to the warrant requirement is not applicable due to our finding that a valid arrest took place.

(6th Cir. 1994); *see also Peterson v. City of Plymouth*, 945 F.2d 1416, 1419 (8th Cir. 1991).

> [I]t is clear that the line between an investigatory detention and an arrest is crossed "when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be *and transport him to the police station*, where he is detained, although briefly, for investigative purposes."

*Centanni*, 15 F.3d at 590 (citation omitted).

Our supreme court recently reviewed when an arrest has occurred for purposes of our speedy indictment and speedy trial rules in *State v. Wing*, 791 N.W.2d 243, 247-49 (Iowa 2010). A vigorous dissent was filed in *Wing*, but it primarily related to the application of the speedy trial requirement to de facto arrests. *See* 791 N.W.2d at 254-56 (Cady, C.J., dissenting). The court in *Wing* concluded the notice provision in Iowa Code section 804.14 was significant unless the situation "is obvious to the arrestee that he or she is being arrested." *Id.* at 249. The court stated,

> When an arresting officer does not follow the protocol for arrest outlined in section 804.14 and does not provide any explicit statements indicating that he or she is or is not attempting to effect an arrest, we think the soundest approach is to determine whether a reasonable person in the defendant's position would have believed an arrest occurred, including whether the arresting officer manifested a purpose to arrest. Viewing the events surrounding an alleged arrest from this perspective is consistent with the way courts analyze whether a person has been seized for Fourth Amendment purposes.

*Id.*

We acknowledge Evans was detained by the police without a warrant, removed from a place in which he was entitled to be, and transported to a police station for investigative purposes. The officers exceeded the bounds of the

investigatory stop, but Officer Nissen specifically informed Evans that he was being detained for a strip search and in fact was not under arrest.

Prior to *Wing* we would have concluded Officer Nissen's statement to Evans was not determinative. *See State v. Turner*, 630 N.W.2d 601, 607 (Iowa 2001). Rather, we would employ an objective test to determine whether a reasonable person in the subject's position would have believed an arrest occurred. *Id.* However, we interpret *Wing* to forego any objective test of what a reasonable person might believe—if the officer has specifically announced his or her intentions in respect to arrest. And here, there is no dispute the officer informed Evans he was only being detained, not arrested.

We acknowledge there is contrary authority concluding an officer's statement at the scene does not change the objective analysis of the situation. For example, in *United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004), the court noted:

> Sapetti told him—even while slapping on the handcuffs—that he was not "under arrest" but was just being "detained" while more identity checking occurred. The officer's language does not change the facts, however: there was probable cause to believe that Jackson had committed a crime, and he was (reasonably) taken into custody. It does not matter for current purposes what label the officer applied at the scene; analysis under the Fourth Amendment is objective . . . .

But even if we have misconstrued the holding in *Wing* and must apply an objective analysis, we are not convinced the detention has been transformed into an arrest. We agree some of the facts strongly support a de facto arrest: Evans was handcuffed, read his *Miranda* warnings, placed in the back of a police vehicle, and taken to the police department. But no controlled substances were

found during the searches of the vehicle or individuals, nor any crime other than a traffic offense investigated or discussed. We do not believe a reasonable person in Evans' position would have believed the police restraint on his freedom amounted to an arrest when he was specifically informed he was not under arrest but rather being detained for a strip search and, at that point, no controlled substances had been found.

*Probable Cause.* The warrant exception of a search incident to an arrest does not require that the arrest precede the search "if it is substantially contemporaneous with it, provided probable cause for the arrest existed at the time of the search." *State v. Peterson*, 515 N.W.2d 23, 25 (Iowa 1994) ("Where [a] formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." (citation omitted)). Accordingly, we must determine if there was probable cause to arrest Evans at the time of the search and if his arrest was contemporaneous with the search.

We first address the question whether probable cause existed to arrest because a search incident to arrest is only valid if there was a lawful arrest. An officer may make a warrantless arrest when there is a reasonable belief that an indictable public offense has been committed and a reasonable ground for believing the person to be arrested has committed it. Iowa Code § 804.7(3); *State v. Freeman*, 705 N.W.2d 293, 298 (Iowa 2005). All of the evidence available to the police officer may be considered even though each factor might not support probable cause by itself. *State v. Ceron*, 573 N.W.2d 587, 592 (Iowa 1997).

We find substantial evidence to support a finding of probable cause for arrest. Although the Iowa Supreme Court has not addressed such an issue, in *United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010), the court found an officer had probable cause to arrest a suspect for marijuana possession when an odor of marijuana was determined to emanate from the specific person. In *Perdoma*, 621 F.3d at 749, the court cited with approval *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004), reaching the same conclusion. In *Humphries*, the court stated,

> While the odor of marijuana provides probable cause to believe that marijuana is present, the presence of marijuana does not of itself authorize the police either to search any place or to arrest any person in the vicinity. Additional factors must be present to localize the presence of marijuana such that its placement will justify either the search or the arrest. In the case of a search, when the odor emanates from a confined location such as an automobile or an apartment, we have held that officers may draw the conclusion that marijuana is present in the automobile or the apartment. But probable cause to believe that marijuana is located in an automobile or an apartment may not automatically constitute probable cause to arrest all persons in the automobile or apartment; some additional factors would generally have to be present, indicating to the officer that those persons possessed the contraband. *See* [*Maryland v.*] *Pringle,* 124 S. Ct. [795,] 800–01 [(2003)] (holding that the presence of cocaine and a roll of money in the passenger area of an automobile gave officers probable cause to believe that the automobile's occupants jointly committed the crime of possession of cocaine). Thus, if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana.

372 F.3d at 659 (citation omitted).

In this case, Officer Nissen localized the source of the marijuana smell to emanate to a specific person, Evans. In trial testimony, Officer Nissen was asked: "[W]hat would you describe as far as the level of the smell of marijuana

that was coming from the defendant at that point? In what area of the defendant was it coming from?" He responded, "It was inside the underwear of the defendant. While I searched his waistband the odor was intense to the point that I was 100 percent sure that he had marijuana down his pants." The smell of burnt marijuana on Evans' person, the scent of fresh marijuana coming from Evans' undergarments, Evans' statement he had smoked marijuana recently, and Evans' behavior throughout the initial searches were sufficient to support probable cause for arrest. Probable cause need not rise to the level of proof required for conviction. *State v. Horton*, 625 N.W.2d 362, 365 (Iowa 2001).

In respect to the second requirement—whether the arrest was contemporaneous with the search—after the marijuana and cocaine were found during the strip search, Evans was then informed by Officer Sullivan that he was being charged with possession with intent in respect to the cocaine, a drug tax stamp violation, and possession of marijuana. We conclude the arrest was contemporaneous with the search.

Because Officer Nissen arrested Evans and had probable cause for the arrest, the strip search performed after transportation to the police station was justified under the search-incident-to-arrest exception to the general warrant requirement rule. *See* Iowa Code § 804.30; *State v. Gaskins*, 866 N.W.2d 1, 15 (Iowa 2015) (noting that a search incident to arrest remains a valid exception to article I, section 8 of the Iowa Constitution "when the arrested person is within reach of contraband and thus able to attempt to destroy or conceal it"); *see also Bradford*, 620 N.W.2d at 507.

Accordingly, we affirm the district court's denial of Evans' motion to suppress on grounds the strip search was a lawful search incident to arrest.

**AFFIRMED.**

Vaitheswaran, J., concurs; Tabor, J., dissents.

**TABOR, Judge.** (dissenting)

I respectfully dissent. It is our job to "scrutinize closely those searches incident to arrest which involve inspections of or intrusions into the body." *See* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.3(c), at 216 (5th ed. 2012). The majority relies on the search-incident-to-arrest exception to the warrant requirement to uphold the district court's denial of the motion to suppress. Because the officer assured Evans he was not under arrest, I do not believe the State may now rely on that exception to justify the strip search conducted after transporting Evans to the police station.

Three Waterloo police cars arrived at the traffic stop of the Lexus SUV driven by Chantelle Bentley in the early morning hours of July 28, 2014. Evans was a passenger. Officer Mark Nissen testified they stopped Bentley because her license was revoked and because Officer Nissen had seen Evans, who also lacked a valid license, driving the vehicle the day before. After smelling burnt marijuana coming from the SUV, Officer Nissen "removed Evans from the vehicle, conducted a search of his person," and "[w]hile searching him located a large sum of money." Officer Nissen testified that while searching Evans "around his waistband area, [he] detected a very strong odor of fresh marijuana." Officer Nissen further testified: "Evans began to flex his buttocks while searching him on the scene, which furthered my concerns that he had something in his pants."

As an initial matter, the majority uses the term "pat-down" to describe the roadside searches of Evans. But the record shows Officer Nissen conducted at least one full search of Evans, not just a pat-down. A pat-down is justified for officer safety if a suspect is considered armed and dangerous. *Terry v. Ohio*,

392 U.S. 1, 24 (1968); *see also Sibron v. New York*, 392 U.S. 40, 64 (1968). During a pat-down, an officer may only seize contraband if its incriminating nature is immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993).

Officer Nissen did not testify he considered Evans to be armed and dangerous, but rather, he believed Evans possessed marijuana, initially based on the smell of burnt marijuana coming from the car and his person and then from what the officer described as the smell of fresh marijuana coming from Evans's underwear. The marijuana odors and Evans's behavior during the search of his person prompted the officer to place Evans, who was already in handcuffs, in the back of the patrol car for a ride to the station.

Because the district court's ruling on the motion to suppress did not separately address the legality of the roadside searches, the majority holds Evans failed to preserve error on his challenge to them. While it is true Evans did not obtain a suppression ruling addressing those searches, the court cited his suspicious conduct during those searches (i.e., "flexing his buttocks") as a contributing factor in deciding probable cause existed to place Evans under arrest even before finding any drugs. Accordingly, we need to examine the propriety of those police interactions as part of our determination if the warrantless strip search was justified as a search incident to arrest.

Officer Nissen testified he believed he had probable cause to arrest Evans for possession of marijuana: "I was 100 percent certain it was in his pants."[2] But

---

[2] When Officer Thomas Frein took the stand at the suppression hearing, he was less sure there was probable cause to arrest Evans for possession of marijuana before he

nevertheless Officer Nissen told Evans he was not under arrest but was merely being "detained." Officer Nissen testified: "It was at that point when I Mirandized him that I was trying to talk to him to further the investigation or try to have some kind of admission or statement from him." During the ride in the backseat of the squad car, the officer told Evans: "I'm giving you the opportunity to tell me about what's down there. I know you at least have some high-grade marijuana down your pants."

It is troubling the officer would purposefully advise a suspect he was not under arrest in the hopes of obtaining admissions uninhibited by protections against self-incrimination afforded arrestees but later justify conducting a strip search of the suspect under the exception for searches incident to arrest. In my view, the State should not be able to have it both ways: claiming not to be making an arrest for purposes of the Fifth Amendment while at the same time claiming the suspect was "arrestable" for purposes of invoking the search-incident-to-arrest exception to the warrant requirement of the Fourth Amendment.

For police to search incident to arrest, it is not enough that the suspect is "arrestable." *See Knowles v. Iowa*, 525 U.S. 113, 118–19 (1998) (reaffirming the "bright-line rule" of *United States v. Robinson*, 414 U.S. 218, 235 (1973), that "authority to conduct a full field search as incident to an arrest" depends on a custodial arrest rather than issuance of a citation in lieu of arrest); *see also Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (upholding a limited search under suspect's

---

was transported to the station, saying: "That's a tough question to answer. Believing that the marijuana was there without having retrieved it, I'd say there was enough—a reasonable suspicion to say there was marijuana in his underwear" but not probable cause.

fingernails as part of detention, but cautioning a full search under *Chimel v. California*, 395 U.S. 752, 763 (1969), would not have been justified without a formal arrest and without a warrant). The search-incident-to-arrest exception is viable only when the suspect has actually been arrested. Otherwise the ground for searching could be renamed the "search-incident-to-probable-cause-to-arrest exception." *See Butler v. United States*, 102 A.3d 736, 746 (D.C. Ct. App. 2014) (Beckwith, J., dissenting); *see also State v. Lee*, ___ S.W.3d ___, ___, 2016 WL 2338427, at *7 (Mo. Ct. App. May 3, 2016) (agreeing with *Butler* dissent and holding warrantless search incident to arrest is not authorized when officers express no intention to arrest suspect). "To adopt the proposition that the search was valid because there was probable cause to arrest puts the cart before the horse." *People v. Evans*, 371 N.E.2d 528, 531 (N.Y. 1977). An actual arrest is an essential requisite to a search incident to arrest. *Id.*

I recognize a valid search incident to arrest may precede the actual arrest; a search is reasonable if it is "substantially contemporaneous" with the arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). But the fruits of the search must not be necessary to support probable cause for the arrest. *See id.* at 111 n.6. Here, the majority decides Evans's arrest was "contemporaneous with the search" because the police placed him under arrest after seizing the baggies of marijuana and cocaine from his underwear during the strip search. The lingering question is whether the police had probable cause to arrest Evans for possession of marijuana before they confirmed he *did* possess marijuana.

The majority cites *State v. Peterson* for the proposition that "[w]here [a] formal arrest followed quickly on the heels of the challenged search" it was not

"particularly important that the search preceded the arrest rather than vice versa." *See* 515 N.W.2d 23, 25 (Iowa 1994) (alterations in original) (quoting *Rawlings*, 448 U.S. at 111). But in *Peterson*, the court determined the defendant was under arrest for failure to have a driver's license, not for possession of the cocaine he was in the process of swallowing when police searched his mouth. *See id.* at 24. Here, Officer Nissen testified he did not arrest Evans on the night in question for failure to have a driver's license the previous day. So the only offense for which the officers were arguably arresting Evans was possession of the raw marijuana that Officer Nissen believed he smelled around Evans's waistband. And Officer Nissen affirmatively stated he had not arrested Evans for that offense during the transportation to the station. The fact Officer Nissen made a deliberate choice not to arrest Evans until after the strip search prevents justifying the strip search as incident to arrest. *See Evans*, 371 N.E.2d at 531 ("The State cannot have it both ways, they must choose. Here the police made a deliberate choice that the [undercover status of the buyer] was more important than the immediate arrest of the defendant and they must be bound by that choice.").

The majority also relies on two federal circuit cases—*United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010), and *United States v. Humphries*, 372 F.3d 653, 659–60 (4th Cir. 2004)—for the proposition that the odor of marijuana, the source of which can be traced to a particular person, provides probable cause for arresting that person for drug possession. This proposition has not yet been accepted by our supreme court. Our supreme court has held a trained officer's detection of a sufficiently distinctive odor, by itself or when accompanied by other facts, may establish probable cause for a search. *See*

*State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011). But "the inquiries about whether the facts justify a search are different from whether they justify a seizure." *See Humphries*, 372 F.3d at 659.

Regardless of how our supreme court would decide this question, in the case before us, the Waterloo officers conducted the strip search as an investigatory tool to confirm their suspicion Evans possessed marijuana and not as an inspection of his person incident to placing him under arrest for possession of marijuana. The State's revisionist treatment of the investigatory strip search as a search incident to arrest does not fit with the historical purposes of this warrant exception, namely to remove any weapons from the arrested person or to seize any evidence on the arrested person to prevent its concealment or destruction. *See Robinson*, 414 U.S. at 235. The search could not be justified for officer safety because Evans was already handcuffed and transported to the station before the strip search. And the only evidence the officers sought to preserve was the drug evidence necessary to support probable cause for the arrest.

Finally, the State raises an alternative argument that the strip search was justified on the existence of probable cause plus exigent circumstances. But the State does not delineate what exigent circumstances existed after the officers transported Evans to the police station that would have prevented them from obtaining a search warrant.

Accordingly, I would reverse the district court's denial of the motion to suppress.