PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.                                                          No. 03-4567

DEUNTE L. HUMPHRIES,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(CR-03-100)

Argued: January 22, 2004

Decided: June 17, 2004

Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Williams joined. Judge Gregory wrote an opinion concurring in the judgment.

## COUNSEL

**ARGUED:** Richard Daniel Cooke, Special Assistant United States Attorney, Alexandria, Virginia, for Appellant. Reuben Voll Greene, JOHNSON & WALKER, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellant.

**OPINION**

NIEMEYER, Circuit Judge:

Deunte Humphries was arrested without a warrant in a high crime area of Richmond, Virginia, after a Richmond police officer smelled the odor of marijuana emanating from Humphries' person and after Humphries walked away from the officer, disobeying orders to stop for questioning. At the time, the officer also had reason to suspect that Humphries was carrying a concealed weapon.

Concluding that the officer did not have "probable cause to arrest" Humphries, the district court suppressed the evidence seized as the fruit of Humphries' arrest.

Accepting the factual findings made by the district court, we conclude as a matter of law that the officer had probable cause to believe that Humphries was committing a crime, justifying his arrest. Accordingly, we reverse the district court's suppression order and remand for further proceedings.

I

On June 25, 2003, City of Richmond Police Officers Gary Venable and A.D. Carr were patrolling an area of Richmond known for drug trafficking. As the officers pulled their marked police car onto a block with 5 to 15 persons "hanging outside" in the general area, Officer Venable saw Deunte Humphries pat his waist area. Officer Venable, a 16-year police veteran, interpreted the waist pat to be a "security check"; he suspected that Humphries was instinctively confirming the presence of his weapon by "checking to make sure it [was] there."

After they stopped their patrol car about 20 feet from Humphries and exited the vehicle, the officers smelled a strong odor of marijuana. When Officer Venable began walking toward a man standing near Humphries, he saw Humphries "out of the corner of [his] eye quickly turn and quickly walk away." Officer Venable then followed Humphries, saying to him, "I need to talk to you for a minute." Humphries did not answer and continued walking away at a quick pace.

As Officer Venable picked up his pace and got to within 5 to 10 feet of Humphries, he smelled "the same strong odor of marijuana . . . coming off of [Humphries'] person" as that which he had smelled upon exiting the patrol car. Officer Venable instructed Humphries to stop, but Humphries continued walking away at the same quick pace.

As Humphries turned up a sidewalk to approach a house on the 3100 block of Fifth Avenue, Officer Venable again instructed Humphries to stop, but Humphries ignored the order and walked quickly to the house and began knocking on the door. Officer Venable stopped at the foot of the stairs to the house and noted that the smell of marijuana remained strong and particularized to Humphries. After Humphries knocked several times, a woman opened the door and Humphries began to enter.

Officer Venable then said to Humphries, "That's it. Stop. Don't go in the house." Humphries ignored Officer Venable's command and walked into the house, glancing back at the officer. As Officer Venable stepped in the doorway and saw Humphries walk toward the kitchen, Officer Venable told Humphries he was under arrest. Officer Venable then went into the house and grabbed Humphries as he started to round a corner and enter the kitchen.

As Officer Venable took Humphries outside of the house, he smelled the odor of marijuana on Humphries' breath. Officer Venable patted Humphries down and recovered a 9mm semi-automatic handgun from the area where the officer had earlier seen Humphries pat his waist. After recovering the weapon, Officer Venable conducted a full search incident to arrest, finding 26 tablets of Percocet in Humphries' jacket pocket and a small amount of crack cocaine in his pants pocket.

Humphries was formally charged with possession of Percocet with intent to distribute, simple possession of Percocet, possession of crack cocaine, and possession of a firearm in furtherance of drug trafficking, in violation of 21 U.S.C. §§ 841, 844 and 18 U.S.C. § 924(c). Before trial, he filed a motion to suppress the drug and handgun evidence seized incident to his arrest, contending that the evidence was the fruit of an arrest that violated his Fourth Amendment rights. He argued that Officer Venable did not have probable cause to arrest him,

nor did the officer have a "reasonable, articulable, particularized suspicion" of crime to stop him.

Following a hearing on Humphries' motion, the district court ordered the evidence suppressed. The court concluded that although the information known to Officer Venable "was certainly enough to give him the particularized suspicion necessary to stop the defendant and to question him to allay his suspicion that the defendant may be involved in the illegal possession or, perhaps more remotely, the distribution of marijuana," Officer Venable did not have probable cause to arrest Humphries. The court apparently understood probable cause to mean "more likely than not, [more than] 50/50."

The government filed this appeal, challenging the district court's ruling suppressing the evidence seized incident to Humphries' arrest.

II

The government does not challenge the district court's factual findings. Rather, it argues that based on the facts actually found by the district court, Officer Venable had probable cause to arrest Humphries and, incident to the arrest, to search him. Accordingly, the government asserts that the district court erred in suppressing the evidence recovered from the search incident to the arrest. Humphries responds simply by arguing that, as a matter of law, the evidence and inferences to be drawn therefrom were insufficient to establish probable cause for his arrest.[1]

Our standard of review is familiar. While we review findings of historical fact only for clear error, we review the determination of probable cause *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). In our deference to fact-finding, we also give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

---

[1]Humphries does not challenge Officer Venable's warrantless entry into the residence to make the arrest, presumably because Humphries lacks standing, and therefore we treat his arrest as one made in a public place.

The legal inquiry begins with the Fourth Amendment, which provides that the people are "to be secure in their persons . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. This limitation is made applicable to the States through the Fourteenth Amendment. *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949). Under the Fourth Amendment, if supported by probable cause, an officer may make a warrantless arrest of an individual in a public place. *Maryland v. Pringle*, 124 S. Ct. 795, 799 (2003); *United States v. Watson*, 423 U.S. 411, 424 (1976); *Street v. Surdyka*, 492 F.2d 368, 371-72 (4th Cir. 1974) (holding that a warrantless arrest may be made in a public place even if the crime for which the arrest was made was a misdemeanor committed outside an officer's presence). "Probable cause" sufficient to justify an arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Determining whether the officer has probable cause involves an inquiry into the totality of the circumstances. *Pringle*, 124 S. Ct. at 800. Moreover, the inquiry does not involve the application of a precise legal formula or test but the commonsense and streetwise assessment of the factual circumstances:

> On many occasions, we have reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Id.* at 799 (internal quotation marks and citations omitted). And as we show deference to inferences that a resident judge draws from the factual circumstances, we show similar respect to the inferences drawn by law enforcement officers on the scene. *Id.* at 799-800; *Ornelas*, 517 U.S. at 699.

In assessing the totality of the circumstances, it is appropriate to consider specifically: an officer's practical experience and the inferences the officer may draw from that experience, *see Ornelas*, 517

U.S. at 700; or the context of a high-crime area, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); or an individual's presence in a high-crime area coupled with his "[h]eadlong flight" upon noticing police, *id.*; or evasive conduct that falls short of headlong flight, *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993); or even "seemingly innocent activity" when placed in the context of surrounding circumstances, *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). At bottom, however, the probable-cause standard is "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Pringle*, 124 S. Ct. at 800. Stripped to its essence, the question to be answered is whether an objectively reasonable police officer, placed in the circumstances, had a "reasonable ground for belief of guilt" that was "particularized with respect to the person to be searched or seized." *Id.*

The facts found by the district court are undisputed. The court found that as Officers Venable and Carr exited their vehicle in a high-crime area of Richmond, "they observed [Humphries] pat his waist area." From 20 feet away, the officers detected the distinct odor of marijuana, and they continued to smell the marijuana as they approached Humphries and another man standing nearby. As the officers drew near, Humphries "turned and began to walk away," and "Officer Venable told him to stop." Humphries did not stop but walked away at "a quick pace." As Officer Venable followed "between 5 and 10 feet" behind Humphries, he continued to smell "the distinct odor of marijuana." The district court found that Officer Venable directed Humphries to stop "on two occasions" but Humphries ignored the orders. When Humphries approached a residence on the 3100 block of Fifth Avenue and knocked on the door, "Officer Venable stood at the foot of the stairs and still smelled . . . the odor of marijuana around the defendant." After Humphries was admitted into the premises by a woman, Officer Venable followed him and placed him under arrest. The district court recognized that Officer Venable was an experienced police officer and "what he had at that time in front of him was the odor of marijuana emanating from the defendant at the distance of between 5 and 10 feet."

With these undisputed facts, the legal question is now presented whether Officer Venable had probable cause to believe that Humph-

ries "ha[d] committed, [was] committing, or [was] about to commit an offense." *DeFillippo*, 443 U.S. at 37.

Under Virginia law, it is a crime to possess marijuana, Va. Code Ann. § 18.2-250.1, or to possess marijuana with the intent to distribute it, *id.* § 18.2-248.1. It is also a crime to carry a concealed weapon without a permit, *id.* § 18.2-308, or to possess a firearm while possessing more than one pound of marijuana with the intent to distribute it, *id.* § 18.2-308.4.

We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place. In *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002), for example, we held that the smell of marijuana emanating from a properly stopped automobile constituted probable cause to believe that marijuana was in the vehicle, justifying its search. Similarly, in *United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001), we recognized that the strong smell of marijuana emanating from an open apartment door "almost certainly" provided the officer with probable cause to believe that marijuana was present in the apartment. *See also United States v. Sifuentes*, 504 F.2d 845, 848 (4th Cir. 1974) (holding that officers' sight of boxes inside a van coupled with the strong odor of marijuana permitted seizure of the boxes because they were in "plain view, that is, obvious to the senses"). While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is. Thus, when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile, and when the odor of marijuana emanates from an apartment, we have found that there is "almost certainly" probable cause to search the apartment. A separate question, of course, remains in these circumstances — whether an exception to the warrant requirement applies, such as the automobile exception in *Scheetz* or the exigent circumstances in *Cephas*.

Humphries contends that these cases are inapposite because the present case raises the issue of probable cause *to arrest*, not to search. It is true that the inquiries about whether the facts justify a search are different from whether they justify a seizure. In the search context, the question is whether the totality of circumstances is sufficient to

warrant a reasonable person to believe that contraband or evidence of a crime will be found in a particular place. *Ornelas*, 517 U.S. at 696; *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whereas in the arrest context, the question is whether the totality of the circumstances indicate to a reasonable person that a "suspect has committed, is committing, or is about to commit" a crime. *DeFillippo*, 443 U.S. at 37. But in both cases, the quantum of facts required for the officer to search or to seize is "probable cause," and the quantum of evidence needed to constitute probable cause for a search or a seizure is the same. 2 Wayne R. LaFave, *Search & Seizure* § 3.1(b) (3d ed. 1996); *compare Pringle*, 124 S. Ct. at 799-800 (arrest context), *with Gates*, 462 U.S. at 230-32 (search context).

While the odor of marijuana provides probable cause to believe that marijuana is present, the presence of marijuana does not of itself authorize the police either to search any place or to arrest any person in the vicinity. Additional factors must be present to localize the presence of marijuana such that its placement will justify either the search or the arrest. In the case of a search, when the odor emanates from a confined location such as an automobile or an apartment, we have held that officers may draw the conclusion that marijuana is present in the automobile or the apartment. *See Scheetz*, 293 F.3d at 184; *Cephas*, 254 F.3d at 495. But probable cause to believe that marijuana is located in an automobile or an apartment may not automatically constitute probable cause to arrest all persons in the automobile or apartment; some additional factors would generally have to be present, indicating to the officer that those persons possessed the contraband. *See Pringle*, 124 S. Ct. at 800-01 (holding that the presence of cocaine and a roll of money in the passenger area of an automobile gave officers probable cause to believe that the automobile's occupants jointly committed the crime of possession of cocaine). Thus, if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana.

In this case, Officers Venable and Carr smelled a strong odor of marijuana immediately upon exiting their patrol car about 20 feet from Humphries. Humphries was not alone on the street, however, so the odor could not initially be tied to Humphries alone. But when

Officer Venable followed Humphries as Humphries quickly walked away, getting to within 5 to 10 feet of Humphries, he continued to smell "the same strong odor of marijuana . . . coming off his person." Officer Venable also smelled the odor of marijuana coming off Humphries as he knocked on the door of the residence that he entered to evade the officer.

The district court credited Officer Venable's testimony, and his testimony that the odor of marijuana followed Humphries down the street was sufficient to particularize the source of the odor to Humphries' person. Just as in *Scheetz*, 293 F.3d at 184, where the smell of marijuana emanating from an automobile constituted probable cause to believe marijuana was present in the vehicle, the odor of marijuana emanating from Humphries was sufficient to provide Officer Venable with probable cause to believe that marijuana was present on Humphries' person. And because Officer Venable had probable cause to believe Humphries was presently possessing marijuana, he had probable cause to arrest him for the crime of possession.

Other factors strengthen the conclusion that Officer Venable had probable cause to arrest Humphries. Officer Venable's probable-cause calculation properly considered Humphries' evasive conduct, even if it fell short of "headlong flight." *See Lender*, 985 F.2d at 154. Humphries immediately walked away as the officers approached, and although he did not run, he walked away at a quick pace, ignoring the officer's commands to stop. He also ignored the officer's command to stop before he entered a residence. Such evasive conduct would suggest culpability to a reasonable officer.

In addition, as the police officers approached in their marked patrol car, Humphries patted his waist, which Officer Venable interpreted as a "security check," an instinctive check by Humphries to see that his weapon was in place. Also, the entire encounter with Humphries took place in an area known for drug trafficking. As an experienced police officer, Officer Venable properly considered these circumstances in his probable-cause calculation, because the increased possibility that Humphries was carrying a weapon and was in an area known for drug trafficking increased the possibility that Humphries was possessing marijuana or other contraband. *See Ornelas*, 517 U.S. at 700 ("[A] police officer may draw inferences based on his own experience in

deciding whether probable cause exists"); *see also Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) ("[W]hen it is considered in the light of all of the surrounding circumstances, even 'seemingly innocent activity' may provide a basis for finding probable cause").

While the district court concluded that the circumstances that confronted Officer Venable provided the basis for a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1 (1968), the court rejected the claim that the circumstances provided probable cause because, as the court stated, "probable cause means more likely than not, [more than] 50/50." If the court rested its ultimate conclusion to suppress the evidence on that understanding, it erred. The Supreme Court has repeatedly admonished that the standard for probable cause is not "finely tuned" or capable of "precise definition or quantification into percentages." *Pringle*, 124 S. Ct. at 800. Indeed, the Court has explicitly admonished that the preponderance of the evidence standard, understood by the district court in this case to apply, is inappropriate:

> Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision.

*Gates*, 462 U.S. at 235, *quoted in Pringle*, 124 S. Ct. at 800. Similarly, we have stated that the probable-cause standard does not require that the officer's belief be more likely true than false. *United States v. Jones*, 31 F.3d 1304, 1313 (4th Cir. 1994).

Because Officer Venable had probable cause to believe that Humphries was in possession of marijuana, he had authority to arrest him without a warrant in a public place. *See Watson*, 423 U.S. at 424; *Street*, 492 F.2d at 371-72. Accordingly, we reverse the district court's order suppressing the evidence seized incident to Humphries' arrest and remand for further proceedings.

*REVERSED AND REMANDED*

GREGORY, Circuit Judge, concurring in the judgment:

I concur only in the judgment reached by the majority. Because the district court correctly found that Officer Venable had reasonable sus-

picion to stop Humphries, detain him, and to even pat him down, the arrest, whether valid or not, was harmless insofar as nothing additional was gained thereby. Accordingly, we need not reach the holding in the majority's opinion.

I

Because the facts as stated in the majority's opinion are sufficient, I will move directly to the ultimate findings of fact made by the district court. After hearing the arguments of counsel and taking a short recess, the district court made brief oral findings and ruled from the bench. The court acknowledged that Officer Venable was "an experienced police officer who has testified many times in front of this Court." J.A. at 95. The court also noted that Officer Venable smelled marijuana "emanating from the defendant at the distance of between 5 and 10 feet." *Id.* Because the court was dissatisfied with the sole "theory" offered during the suppression hearing by the Government to support the arrest, *id.*, Officer Humphries seemingly proceeded directly to formal arrest, and because the Government was "steadfast that there was probable cause to place the defendant under arrest," the district court understandably granted the motion to suppress. J.A. at 96. In doing so, the court concluded that Officer Venable did not have probable cause to arrest Humphries. To the contrary, however, the Court found that "there was an abundance of information to allow Officer Venable to conduct an investigative detention, to question this defendant, and to perhaps pat him down for his safety." *Id.*

II

We review determinations of probable cause and reasonable suspicion *de novo*. *United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994). A reviewing court, however, should take care to (1) review findings of historical fact only for clear error, and (2) to give due weight to inferences drawn from those facts by resident judges. *Orleans v. United States*, 517 U.S. 690, 699 (1996). This is true because "a trial judge views the facts of a particular case in light of the distinctive features and events of the community. Such background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference." *Id.*

The district court clearly found that Officer Venable had the requisite reasonable suspicion to stop and detain Humphries. In fact, the district court found that "there was an *abundance of information* to allow Officer Venable to conduct an *investigative detention*, to *question* this defendant, and to perhaps *pat him down* for his safety."[1] Because the district court correctly found that Officer Venable was justified in stopping—or attempting to stop, as it were—Humphries and detaining him, and that he could have patted him down, *United States v. Hamlin*, 319 F.3d 666, 671-72 (4th Cir. 2003), the fact that Officer Venable "arrested" him first and then patted him down was, at bottom, harmless. Even if the arrest were illegal, nothing was gained from the arrest other than that which could have been properly seized pursuant to the lawful pat-down and investigative detention. Surely, evidence later seized, which could have been lawfully seized earlier, is not fruit of a poisonous tree when the "tree" itself—the stop and pat-down—was never poisonous in the first instance.

When suppressing evidence as the fruit of an illegal arrest, the guiding question is "whether, granting establishment of the *primary illegality*, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (citation omitted) (empha-

---

[1]The district court disagreed with the Government's theory that Officer Venable had probable cause to *arrest* Humphries for possession of marijuana. I note, however, that in the Government's brief it also argued in opposition to the motion to suppress that the "arrest" of Humphries was an "investigative detention." Indeed, the Government's brief before the district court raised several theories to justify the arrest and pat-down, including: probable cause that "criminal activity was afoot," J.A. at 23; hot pursuit, *id.*; investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968), *id.* at 24; and search incident to lawful arrest, *id.* at 25. Although the Government's arguments certainly could have been more precise, the district court was therefore not confined to one theory of arrest, *i.e.*, for a misdemeanor possession offense. Perhaps the district court may have better understood the Government's arguments had the Government argued specifically the theories asserted in their written briefs, instead of devoting considerable oral argument to the holding of *United States v. Jones*, 204 F.3d 541 (4th Cir. 2000), which is distinguishable from this case.

sis added). In this case, there was no "primary illegality." And, it was the pat-down that lead Officer Venable to the weapon and contraband; there was no other intervening police action. Moreover, the purpose of suppressing evidence is to prevent similar misconduct on the part of the police in the future and to deny them any benefit from such conduct. Although one might envision a different—perhaps even better—course of action on the part of Officer Venable, it was hardly misconduct. Officer Venable did not embark on a fishing expedition merely hoping that "something might turn up." *Brown v. Illinois*, 422 U.S. 590, 605 (1975).[2] Unlike the police misconduct in *Brown*, *supra*, Humphries' arrest was not effected for the purpose of obtaining evidence.

Accordingly, I would reverse the suppression order on the narrower ground of harmless arrest.

---

[2]In *Brown*, the Supreme Court reversed the Illinois Supreme Court's per se rule that a confession that is otherwise improper under the Fifth Amendment, may not be suppressed under the Fourth Amendment. 422 U.S. 590. The Court emphasized the prophylactic purposes of the Fourth Amendment and held that a voluntary confession under the Fifth Amendment may be suppressed under the Fourth Amendment, as fruit of a poisonous tree, due to police misconduct, *i.e.*, where "the detectives embarked upon this expedition for evidence in the hope that something might turn up [or where the manner an] arrest was affected gives the appearance of having been calculated to cause surprise, fright, and confusion."