UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-4239

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

     v.

ANTHONY T. CHAMPION,

          Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  James R. Spencer, District Judge.  (3:13-cr-00097-JRS-1)

Argued:  January 27, 2015          Decided:  April 10, 2015

Before MOTZ and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished opinion.  Senior Judge Davis wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED**: Daniel Paul Watkins, WILLIAMS MULLEN, Richmond, Virginia, for Appellant.  Stephen Wiley Miller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF**: John S. Davis, V, WILLIAMS MULLEN, Richmond, Virginia, for Appellant.  Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

Anthony T. Champion appeals his conviction under 18 U.S.C. § 922(i) for transportation of stolen firearms found in the trunk of a car he was operating. Champion contends the denial of his motion to suppress evidence from the vehicle search was erroneous because the mere odor of burnt marijuana in the passenger compartment is insufficient to establish probable cause to search the trunk of a car. The government responds that the odor of burnt marijuana emanating from the car gave troopers probable cause to search any part of the car that could contain marijuana, including the trunk. We conclude that resolution of the issue framed by the parties is unnecessary in this case. The totality of the circumstances surrounding the traffic stop, based on several facts in addition to the strong odor of burnt marijuana, reveals that the troopers had probable cause to search for contraband in both the passenger compartment and the trunk of the car. Accordingly, we affirm.

In considering a district court's denial of a motion to suppress, we review its "legal determinations de novo and actual findings for clear error." United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011). When a district court has denied a suppression motion, "we construe the evidence in the light most favorable to the government." Id. (internal quotation marks omitted).

2

On January 13, 2013, Trooper A.B. Treakle was patrolling Northbound Interstate 95 when he pulled over a car that appeared to be speeding and violating a Virginia law that prohibits dangling objects that obstruct the driver's view of the highway. When Trooper Treakle attempted to stop the car, the driver, Appellant Champion, did not immediately pull over to the left lane where he could have easily stopped. Rather, he started to drive erratically, forcing Trooper Treakle to catch up to the speeding car. Eventually, Trooper Treakle caught up to the car, which was now pulled over on the right shoulder of the highway. Champion exited the car, walking in the travel lane. A passenger in the car, Karissa Wyatt, moved into the driver's seat. In addition to Wyatt, who was Champion's girlfriend, there was a third passenger in the car, Gabriel Shealy, who was holding a puppy.

When Trooper Treakle confronted Champion about his erratic driving, Champion eventually told the trooper that he did not have a driver's license. After talking to Champion, who was still outside of the car, the trooper approached the driver's side of the car to talk to the passengers. As soon as he got to the window of the car, he smelled a "fairly strong" odor of

3

marijuana.[1] J.A. 26. It was at this point that Trooper Treakle decided that "a search of the vehicle" was necessary and that "this was no longer a traffic stop." J.A. 26-27. He therefore requested a back-up trooper and, in the meantime, ran the passengers' drivers licenses in the computer system.

When the back-up trooper arrived, the troopers handcuffed Champion and placed him in a police car. Trooper Treakle asked Champion if there was any contraband in the car, and Champion responded "none that I know of." J.A. 107. The passengers were ordered out of the car, searched, and positioned outside of the car with the back-up trooper while the search proceeded.

Trooper Treakle first commenced a search of the passenger compartment of the car, looking specifically for marijuana. As he did so, the back-up trooper approached Treakle and told him that the passengers stated that their destination was Washington, D.C., which was inconsistent with Champion's earlier assertion that his destination was Boston. The passengers also had admitted that they had smoked marijuana inside the car.[2]

---

[1] Trooper Treakle was accompanied by his drug detection dog while patrolling the interstate. He testified that he did not take the dog out to sniff the car because if a trooper smells marijuana, the protocol is to not run the dog. J.A. 32.

[2] There is some inconsistency in the hearing testimony. The back-up trooper first testified that only one of the passengers admitted that she smoked marijuana inside the car, J.A. 54, but then later stated that "they stated that they were smoking (Continued)

At some point after this interaction, Trooper Treakle gave the car keys to his back-up and instructed him to search the trunk. The search of the trunk revealed a "thin drawstring-style gym bag," J.A. 57, part of the contents of which, when the bag was first touched, was immediately recognized as the handle of a firearm. The bag contained nine firearms. After Mirandizing Champion, the troopers questioned him, and he admitted he purchased the guns but denied that they were stolen or that he was a felon.

After the return of the indictment, Champion filed a motion to suppress the firearms and the statements he made after he was Mirandized. As to the search, the district court denied the motion, concluding, in part, that the "Troopers ha[d] probable

inside the vehicle." J.A. 65. There is also some dispute between the parties over the timing of the passengers' admission that they smoked marijuana inside the car. Ultimately, the district court found that one of the passengers "told [the back-up trooper] that she and her companions had been smoking 'weed' while driving on the highway" and that this admission occurred while Trooper Treakle was searching the passenger compartment of the car (in other words, before the search of the trunk occurred). J.A. 107.

Champion does not challenge these factual findings, which are amply supported by the evidence. Consequently, to the extent that he contends we should assess the evidence of probable cause sufficient to search the trunk as of (or prior to) the moment when Trooper Treakle first commenced the search of the passenger compartment, we reject his contention. Rather, we assess the sufficiency of the evidence based on all of the facts known to the troopers before the search of the trunk commenced.

cause to search the trunk of the vehicle once they smell[ed] marijuana in the passenger compartment." J.A. 108. The factual support for the existence of probable cause was bolstered, the court reasoned, because the strong odor of marijuana was "corroborated by the statement of Ms. Wyatt that each of the occupants had possessed and smoked marijuana in the car while on the highway." J.A. 108. Champion subsequently pled guilty to the indictment count of possession of a stolen firearm, but reserved the right to appeal the denial of his motion to suppress.[3] This appeal followed.

As mentioned above, the parties have sought to draw us into their debate over whether the mere odor of burnt marijuana in the passenger compartment of a vehicle is ever sufficient to give rise to probable cause to search the trunk of the vehicle, a question we have not specifically addressed in a published opinion and as to which there exists a circuit split. Compare United States v. Parker, 72 F.3d 1444, 1450 (10th Cir. 1995)("[A]n officer obtains probable cause to search the trunk of a vehicle once he smells marijuana in the passenger compartment and finds corroborating evidence of contraband."), with United States v. McSween, 53 F.3d 684, 686-87 (5th Cir.

---

[3] Champion concedes, of course, that if probable cause supported the search of the vehicle, no warrant was necessary.

6

1995)(citing cases in which the court had held that "the smell of marihuana alone may be ground enough for a finding of probable cause"), United States v. Winters, 221 F.3d 1039, 1041 (8th Cir. 2000) (affirming the lower court's conclusion that "once the trooper smelled marijuana, he had probable cause to search the entire vehicle, including the trunk and all containers therein, for controlled substances"), and United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) ("Kayras's detection of the smell of burnt marijuana while he was conducting the search for an open container gave him probable cause to search the entire vehicle for drugs."). But we find it unnecessary to choose sides in this debate.

Here, the district court's determination of probable cause relied on more than the mere odor of marijuana.[4] Because the record reveals other facts which amply support a finding of probable cause, this case does not necessitate resolving the more difficult question that the parties present.

---

[4] Although the district court seemed to adopt a categorical rule when it stated that the "Troopers [had] probable cause to search the trunk of the vehicle once they smell[ed] marijuana in the passenger compartment," J.A. 108, the court went on to say that its finding of probable cause was supported by the statement of one of the passengers that "each of the occupants had possessed and smoked marijuana in the car while on the highway." J.A. 108. Its determination of probable cause, therefore, does not rely solely on the trooper's testimony that he smelled marijuana emanating from the passenger compartment of the car.

7

We hold that the district court did not err in finding there existed probable cause to search the trunk of the car. As we explained in United States v. Kelly, 592 F.3d 586 (4th Cir. 2010):

> Probable cause is not readily, or even usefully, reduced to a neat set of legal rules. However, the Supreme Court has described it as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. When assessing probable cause, we must examine the facts from the standpoint of an objectively reasonable police officer, giving due weight to inferences drawn from those facts by . . . local law enforcement officers.

Id. at 591-92 (internal citations and quotation marks omitted). Here, several factors in the aggregate amounted to probable cause for the troopers to believe that contraband existed generally within the car, including the trunk.

First, the strong odor of marijuana is the most obvious factor supporting a finding of probable cause. See United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place. . . . While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is."). Trooper Treakle's undisputed testimony that he recognized the "strong odor" of marijuana immediately upon his approach to the vehicle, coupled

8

with Champion's tantalizingly ambiguous response to his inquiry whether there was contraband in the car ("none that I know of") provide compelling evidence that it was reasonable for him to conclude that there was a "fair probability" that marijuana (or other contraband) was located generally within the car. See Kelly, 592 F.3d at 592.

Second, Ms. Wyatt's admission that the occupants of the car had been smoking "weed" while driving on the highway further supports the conclusion that the troopers had probable cause to search the trunk, and not just the passenger compartment, for contraband. This admission is especially important here because of the temporal element: the passenger admitted that the occupants had been smoking "weed" while on the highway on which they were pulled over. Thus, the admission established a fair probability that contraband, specifically marijuana, was present in the car at the time it was pulled over. And, since even personal use quantities of marijuana can be stored in a trunk, there was a fair probability that marijuana would be found in the trunk. See United States v. Turner, 119 F.3d 18, 20-21 (D.C. Cir. 1997) (rejecting defendant's argument that evidence of personal use of marijuana is insufficient to support a finding of probable cause to search the trunk of the car and collecting cases in which police officers were justified in searching the trunk of cars after finding evidence of marijuana use).

9

Finally, the occupants' inconsistent answers as to their travel plans also contribute to a finding of probable cause to search the trunk for contraband insofar as the inconsistencies supported an inference of ongoing criminal activity. See United States v. Ortiz, 669 F.3d 439, 445 (4th Cir. 2012) (finding that a defendant's "uncertainty and confusion about his destination" supported a finding that probable cause existed to search his car for contraband); United States v. Guevara, 731 F.3d 824, 831 (8th Cir. 2013) (affirming a finding of probable cause to search a car in part on the basis that the defendant and her sister "gave inconsistent answers about which relative they were going to visit, and neither of them knew the address of their final destination").

In sum, a reasonable law enforcement officer could conclude on this record that (1) the inconsistencies in the accounts of the occupants' journey, combined with (2) the strong odor of marijuana, (3) the admission that the occupants smoked marijuana in the car during the trip, and (4) Champion's apparent "uncertainty" whether there was contraband in the vehicle he himself was driving (allegedly all the way to Boston from Virginia) were, in the aggregate, indicative of criminal activity, such as (but not necessarily limited to) distribution or possession of illegal narcotics. As such, there was probable cause to search the trunk, as both distribution and possession

quantities of narcotics can be found in the trunk of a car. Thus, in light of the totality of the circumstances, there was a fair probability that the car contained contraband and that it was stored in the trunk. It follows that the district court correctly denied the motion to suppress the firearms discovered during a lawful search of the vehicle by the troopers.

The judgment is

AFFIRMED.

11