**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2114

UNITED STATES OF AMERICA,
                                        Appellant
v.

ABDUL OUTLAW
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2:21-cr-00382-001)
District Judge: Honorable Brian R. Martinotti

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 15, 2025

Before: CHAGARES, *Chief Judge*, SCIRICA and
RENDELL, *Circuit Judges*

(Filed: May 28, 2025)


Sabrina G. Comizzoli
Mark E. Coyne

Alina Habba
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

*Counsel for Appellant*

Michael J. Pappa
Rudnick Addonizio Pappa & Comer
25 Village Court
Park Village
Hazlet, NJ 07730

*Counsel for Appellee*
_____

OPINION OF THE COURT
_____

**RENDELL**, *Circuit Judge*.

Though they are often discussed in tandem, probable cause to search is not the same as probable cause to arrest. The facts in this case could have plausibly supported a search of Appellee Abdul Outlaw's vehicle. But they did not support his arrest, and therefore did not support a search incident to his arrest. Accordingly, we will affirm the District Court's order suppressing the fruits of the officer's unlawful search.

I.

On the evening of December 31, 2020, four plainclothes police officers in unmarked cars patrolled a high-crime area in Newark. One of the officers, Detective Marc Castro, testified that on this patrol, he spotted a parked, running Audi that had its sunroof open and "heavy aftermarket tints." App. 60. As

Castro's vehicle approached the Audi, he testified that he smelled burning marijuana,[1] and decided to conduct a vehicle stop. At the time, it was a crime in New Jersey to operate a vehicle while in possession of marijuana.

Castro then stepped out of his vehicle, illuminated the Audi's windshield with his flashlight, and saw that there were two occupants in the vehicle. One of those occupants—the driver—was Appellee Abdul Outlaw. When he shined his flashlight into the windshield, Castro did not see Outlaw or the passenger smoking marijuana, exhibiting signs of being under the influence of marijuana, discarding anything, or making furtive movements. Castro approached the driver's side of the Audi, Outlaw rolled down his window, and Castro saw smoke emanating from the window and noticed that "the smell of burning marijuana became more pungent." *Id.* at 64. Upon request, Outlaw provided his license, registration, and insurance documents without making sudden or furtive movements, and while keeping his hands in plain view.

Castro then asked Outlaw to step out of the vehicle, "[d]ue to the belief there's criminal activity afoot in the vehicle due to the smell of burning marijuana, along with physically seeing the smoke emanating from the vehicle." *Id.* at 65. He did not, however, see Outlaw or the passenger smoking

---

[1] Though it was a cold day, Castro kept his window rolled down "to be aware of sounds, odors, [and] smells." App. 59. He testified that he knew the smell was burning marijuana from his training and experience as a detective in the Newark Police Department's criminal intelligence unit, which included "hundreds" of encounters with marijuana or other controlled substances. *Id.* at 62. He also testified that there were no pedestrians in the Audi's vicinity.

marijuana, ask them if they had been smoking marijuana, smell marijuana on their breath or clothing, or observe that they appeared to be under the influence of marijuana. Castro decided to pat down Outlaw "[d]ue to the burning marijuana inside the vehicle" and his "belie[f] there may be more contraband or weapons, and due to officers' safety." *Id.* at 66. Castro found a firearm with a scratched-off serial number and a prescription bottle with 3.6 grams of raw marijuana on Outlaw's person, and (after the pat-down) placed him under arrest. Castro testified that the raw marijuana he uncovered was not the burning marijuana he smelled.

Officers also searched the passenger. They did not find anything illicit and did not arrest her. They also did not find any weapons or drugs in the car, nor did they find marijuana residue or paraphernalia that could confirm Castro's testimony that he smelled burning marijuana.

The officers issued two motor vehicle summonses to Outlaw for his illegally tinted windows and possession of marijuana (the raw marijuana in the bottle) in a motor vehicle in violation of N.J. Stat. Ann. §§ 39:3-75, 4-49.1. Outlaw was also charged with unlawful possession of a firearm and unlawful possession of marijuana in violation of N.J. Stat. Ann. §§ 2C:39-7B(1), 39-5B, 39-3D, 35-10A(4). Later, after the Government adopted the case for federal prosecution, a grand jury charged Outlaw in a one-count indictment with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Outlaw moved to suppress the evidence obtained from Castro's search (i.e., the firearm and prescription bottle with marijuana), and, after an evidentiary hearing and supplemental briefing, the District Court granted Outlaw's motion. The court reasoned that, while the vehicle stop was lawful given the tinted windows and burning marijuana smell, Castro did not have

4

reasonable suspicion or probable cause to search Outlaw's person. This appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 18 U.S.C. § 3731, as the United States Attorney has certified that it complies with § 3731's requirements.

We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Alexander*, 54 F.4th 162, 170 n.10 (3d Cir. 2022) (alteration in original) (quoting *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002)).

## III.

The sole issue before us is whether Detective Castro had probable cause to arrest Outlaw. If there was probable cause to arrest Outlaw, it was permissible to search his person. *See United States v. Robinson*, 414 U.S. 218, 226 (1973) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."). The fact that Castro searched Outlaw before the formal arrest is of no moment—if there was probable cause to arrest Outlaw prior to the pat-down, there was no Fourth Amendment violation. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *United States v. Paige*, 870 F.3d 693, 700–01 (7th Cir. 2017) (no Fourth Amendment violation where officer conducted pat-down shortly before arresting defendant, where

5

officer smelled marijuana on defendant prior to search); *United States v. Wright*, 844 F.3d 759, 763 (8th Cir. 2016) (same).[2]

The Fourth Amendment permits an officer to arrest a suspect without a warrant where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," that is, where the arrest is supported by probable cause. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause is determined "with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007). "[W]e do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Fla. v. Harris*, 568 U.S. 237, 249 (2013). So here, we cannot consider the fact that the officers did not uncover any marijuana paraphernalia, residue, or other evidence of marijuana use in Outlaw's car. We can only consider the facts within Castro's knowledge when he decided to search Outlaw's person.

The Government urges that the marijuana odor and smoke emanating from the driver's side window created probable cause to arrest Outlaw. In support of this argument, the Government points to *United States v. Ramos*, where we said that "the smell of marijuana alone, if articulable and

---

[2] As Outlaw rightly points out, the fruits of the search themselves (the firearm and marijuana) cannot provide probable cause for the arrest. *See Smith v. Ohio*, 494 U.S. 541, 543 (1990). But the Government does not advance that dead-end argument here.

particularized, may establish not merely reasonable suspicion, but probable cause." 443 F.3d 304, 308 (3d Cir. 2006).

The Government reads *Ramos* to say that marijuana odor alone creates probable cause to arrest. But that ignores the phrase "if articulable and particularized." *Id.* We now clarify the import of that phrase and join our Sister Circuits in concluding that, while the smell of marijuana alone can create probable cause to search a vehicle,[3] there must be facts that connect the smell to an individual passenger for there to be probable cause to arrest that passenger. *See Paige*, 870 F.3d at 700; *United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010); *United States v. Humphries*, 372 F.3d 653, 659–60 (4th Cir. 2004).[4] In other words, for a search of a vehicle (or other

---

[3] *United States v. Green*, 897 F.3d 173, 186 (3d Cir. 2018); *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002); *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013); *Long v. United States*, 847 F.3d 916, 921 (7th Cir. 2017); *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013); *United States v. Snyder*, 793 F.3d 1241, 1244 (10th Cir. 2015); *United States v. Stancil*, 4 F.4th 1193, 1199 (11th Cir. 2021); *cf. United States v. Sheffield*, 832 F.3d 296, 305 (D.C. Cir. 2016) (probable cause to search vehicle where officer "smelled the 'faint' scent of 'fresh marijuana,' and saw an abnormally large number of air fresheners throughout the car").

[4] Of course, in both circumstances, the smell of marijuana can only establish probable cause when an officer has training and experience relevant to identifying such a smell. *See Green*, 897 F.3d at 183, 186. Here, it is undisputed that Castro was "aware of the smell of marijuana" "[d]ue to [his] training and experience" in "hundreds" of "narcotics arrests[ and] investigations[.]" App. 62.

confined space), the odor must be particularized to that space, and for an arrest or search of a person, the odor must be particularized to that person. *See Ramos*, 443 F.3d at 308; *cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person."). When the odor is particularized to a vehicle, and an individual is alone in that vehicle, this distinction is immaterial. But where, as here, there are multiple individuals within the vicinity of the smell, there is not probable cause of marijuana possession particularized to any one person absent additional facts.[5] *See Humphries*, 372 F.3d at 659.

---

[5] To be clear, this scenario is distinct from that in *Maryland v. Pringle*, 540 U.S. 366 (2003). There, the officers found $763 in cash and five plastic baggies containing cocaine in a vehicle and arrested all three of the vehicle's occupants despite not knowing to whom the cash and drugs belonged. *Id.* at 368. The Court concluded that the officers had probable cause to arrest the three men, as it was "reasonable . . . to infer a common enterprise" because "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id.* at 373; *see also United States v. Chauncey*, 420 F.3d 864, 871 (8th Cir. 2005) (inferring common criminal enterprise among vehicle's passengers based on odor and observation of "seeds, stems, and sandwich bags on the floor of the van, and a scale inside a grocery bag hooked to the passenger seat"); *United States v. Myers*, 986 F.3d 453, 454–55 (4th Cir. 2021) (inferring common criminal enterprise among vehicle's passengers where officers found over 300 grams—a "distributable amount"—of fentanyl in a vacuum-sealed plastic bag in the

While it is a close question, we agree with the District Court that Castro's testimony does not establish probable cause.[6] Before he approached the car, Castro did not observe or detect any evidence of marijuana ingestion (other than the odor), nor did he see Outlaw or the passenger move furtively or attempt to discard any evidence. True, when he walked towards the car, Castro saw smoke come from the driver's side window and noticed that the odor became more pungent. But who's to say that it was necessarily Outlaw's smoke, rather than that of the passenger? Moreover, after Outlaw got out of the car, Castro did not smell marijuana on his person, clothing, or breath, and did not see evidence indicating that Outlaw was

---

vehicle and previous surveillance raised suspicion of drug dealing). Differently, here, smoke and marijuana odor alone do not evince a common criminal enterprise. While a drug dealer would be unlikely to expose an innocent person to evidence of their criminal activities, we cannot say the same of a casual marijuana user.

[6] We reject Outlaw's argument that the District Court did not find Castro's testimony credible. True, the District Court noted that Castro's testimony was "somewhat contradictory" and "seemingly conflicting." App. 24 & n.16. But it also stated that it "found no indicia, in Detective Castro's body language, tone, or otherwise, that he was being anything but forthright and honest at the Hearing when providing his testimony;" and "therefore . . . f[ound] Detective Castro's testimony credible." *Id.* at 23 n.14. It then reiterated that it "found Detective Castro to be credible," *id.* at 24 n.15. In light of these statements, we cannot read the District Court's opinion as Outlaw does. In the absence of clear error, we too accept Castro's testimony as credible.

under the influence of marijuana. If the smoke from the driver's side window heightened Castro's suspicion that Outlaw (not the passenger) was smoking marijuana, the lack of a smell on Outlaw's person or other signs of recent ingestion should have dispelled such suspicions.

In cases where courts have concluded that marijuana odor was sufficiently localized to the arrestee, the connection to the arrestee was not in doubt. And, in those cases, events leading up to the arrest increased or confirmed the officer's individualized suspicion, whereas here, they undermined it. In *Humphries*, which we relied on in *Ramos*, 443 F.3d at 308, the officers smelled "a strong odor of marijuana" when they were about 20 feet from Humphries. 372 F.3d at 659. There was not probable cause to arrest Humphries at that point, however, as he "was not alone on the street, . . . so the odor could not initially be tied to [him] alone." *Id.* But there *was* probable cause to arrest him once the officer followed him and, from 5 to 10 feet away, smelled "the same strong odor of marijuana . . . coming off his person." *Id.* Likewise, in *United States v. Paige*, there was probable cause to arrest Paige where the officer smelled marijuana coming from his person and no other people were around. 870 F.3d at 700–01. And in *United States v. Perdoma*, there was probable cause to arrest Perdoma where the officer smelled marijuana emanating from his person during a brief one-on-one conversation. 621 F.3d at 747–49. In each of those cases, the officer could reasonably discount the possibility that the odor came from someone other than the arrestee. This case would be analogous if Outlaw had been alone in his car. But he was not. There was a very real possibility that the passenger's actions, not Outlaw's, created the marijuana odor and smoke. We therefore conclude that probable cause was lacking, and the search violated Outlaw's Fourth Amendment rights. The District Court was right to

10

suppress the fruits of Castro's unlawful search. *See United States v. Dupree*, 617 F.3d 724, 730 n.5 (3d Cir. 2010).

IV.

For the foregoing reasons, we affirm the District Court's order granting Outlaw's motion to suppress.

11