**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2039
_____

UNITED STATES OF AMERICA,
Appellant

v.

ESTEBAN RAFAEL DIAZ BORROME, also known as Esteban Rafael Borrome
Diaz; BEN CARRASQUILLOSANTO; JONATHAN FERNANDEZ MONTESINO;
SMARLING VILLIO DE LOS SANTO; JOSE MANUEL MARTES GONZALEZ,
also known as Jose Manuel Mates Gozales, also known as Jose Manuel Mates
Gonzalez; GUILLERMO MORALES; WILFREDO RICARDO VAZQUEZ LOPEZ;
EMMANUEL RODRIGUEZ RODRIGUEZ; JOSE TORRES RUSSI
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 3:22-cr-00001-001)
District Judge: Honorable Robert A. Molloy
_____

Argued on May 1, 2025

Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Opinion filed: October 9, 2025)

Ann O. Adams  **[Argued]**
United States Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Avenue NW, Room 1252
Washington, DC 20530

Adam Sleeper
Delia L. Smith
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802

*Counsel for Appellant*

Namosha Boykin  **[Argued]**
Law Office of Namosha Boykin
9500 Wheatley Shopp Center II
Suite 2, PMB 150
St. Thomas, VI 00802

*Counsel for Appellee Esteban Rafael Borrome Diaz*

_____

OPINION[*]
_____

FREEMAN, *Circuit Judge*.

The government appeals the District Court's order suppressing evidence of a firearm recovered during a warrantless automobile search.  For the following reasons, we will affirm the order.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

# I

Federal law enforcement obtained intelligence about a planned drug exchange on December 11, 2021. The plan involved individuals who would travel by jet ski from Puerto Rico to St. Thomas, U.S. Virgin Islands, to collect cocaine. On the morning of December 11, an aviation agent conducted aerial surveillance of the ocean between the two islands. He spotted four jet skis traveling from Puerto Rico towards St. Thomas, and he watched as the jet skis arrived at Mermaid's Chair—a beach inside the gated community of Botany Bay on St. Thomas.

The agent saw a single red Jeep Wrangler with a black top parked in a roundabout at Mermaid's Chair. The Jeep was the only vehicle parked in what "look[ed] like a fairly secluded spot." App. 197. The agent also saw five men on the beach, two of whom signaled to the jet skis as they approached.

The men on the beach used gas cans to refuel the jet skis and gave duffel bags to the individuals driving the jet skis. The jet skis left Mermaid's Chair with the duffel bags within four minutes of arriving. The agent who observed these activities later testified that the duffle-bag transfer was typical of illegal drug smuggling.

The aviation agent relayed his observations to agents on the ground. He followed the jet skis when they left Mermaid's Chair, ceasing his observation of the beach.

Three agents on the ground positioned themselves at the gate to Botany Bay—the only way vehicles can access the area. A red Jeep Wrangler with a black top approached the gate twenty minutes after the jet skis had departed. The agents stopped the Jeep because it matched the make and color of the vehicle parked near the beach during the

3

duffle-bag handoff. Their intent was to detain the occupants and wait for further developments from other agents who were chasing the jet skis.

There were six occupants in the Jeep, including the driver, Esteban Rafael Borrome Diaz. The agents ordered the occupants out of the Jeep and detained them in handcuffs on the ground nearby. All the occupants except the driver had on wet and sandy shoes, and there was a wet towel and a damp floorboard inside the Jeep.

As the occupants exited the Jeep, an agent saw a firearm in the back pocket of the driver's seat and confiscated the firearm. The agents then searched the Jeep and recovered a second firearm with no visible serial number in the center console. Around the same time, the agents at Botany Bay were informed that the jet skis were fleeing from law enforcement.

After an hour-long jet-ski chase, agents on the water found one of the jet skis. It had been abandoned along with a duffel bag containing cocaine. Upon hearing about the recovery of cocaine from the jet ski, the agents at Botany Bay arrested the six men who had been in the Jeep.

A grand jury returned an indictment charging Borrome Diaz and eight others with two drug offenses and a firearm offense. Borrome Diaz moved to suppress both firearms recovered from the Jeep. After a hearing, the District Court suppressed only the second firearm (the one recovered from the center console), concluding that the officers lacked probable cause to search the Jeep. The government appealed the suppression order.

4

**II**[1]

"Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment" unless one of a few specific exceptions applies. *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). One such exception is the automobile exception, which generally allows officers to "search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 584 U.S. 586, 592 (2018).

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted). It is "a fluid concept" that "deals with probabilities and depends on the totality of the circumstances." *Id.* (citation omitted). To assess probable cause for a search, "[w]e evaluate the events which occurred leading up to the search, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *United States v. Donahue*, 764 F.3d 293, 301 (3d Cir. 2014) (cleaned up). Where officers have probable cause that an automobile contains evidence of a crime, they may seize that evidence without a warrant. *Colorado v. Bannister*, 449 U.S. 1, 3–4 (1980) (per curiam).

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). We have jurisdiction under 18 U.S.C. § 3731, as the government has certified that this appeal complies with § 3731's requirements. *See United States v. Outlaw*, 138 F.4th 725, 728 (3d Cir. 2025). We review the District Court's findings of fact for clear error, and we exercise plenary review of its application of law to the facts. *Id.*

The government contends that agents had probable cause to search the Jeep, so it has the burden of establishing probable cause by a preponderance of the evidence. *See Donahue*, 764 F.3d at 300. It relies on the agents' knowledge of the following: the tip about a planned drug exchange that day involving jet skis from Puerto Rico; the jet skis that came from Puerto Rico that day; the duffle-bag handoff at the beach; the Jeep being the only car in the parking area above Mermaid's Chair at the time of the handoff; the Jeep's arrival at the Botany Bay gate twenty minutes after the jet skis drove away from the beach; the wet and sandy shoes on five of the Jeep's six occupants; the firearm in the back pocket of the driver's seat; and the jet skis' flight from law enforcement.

As the District Court determined, these circumstances gave the agents at Botany Bay reasonable suspicion to stop the Jeep. But to search the Jeep, they needed probable cause, which is a more demanding standard than reasonable suspicion. *See Kansas v. Glover*, 589 U.S. 376, 380 (2020) ("Because it is a less demanding standard, reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." (cleaned up); *United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023) ("[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)))). Here, the government did not meet those demands.

The government bases its probable cause argument on three premises: (1) the men who loaded up the jet skis on the beach were the same men found in the Jeep, (2) the handoff at the jet skis involved criminal activity, and (3) there was contraband or

6

evidence of a crime inside the Jeep. Premise No. 2 is well supported, but Premise Nos. 1 and 3 are not.

The government says it was reasonable for agents to believe that the men in the Jeep exited the vehicle before the aerial surveillance began, loaded up the jet skis with fuel and duffle bags, and then returned to the Jeep after the aerial surveillance left the area. But this series of suppositions does not amount to probable cause to search the Jeep. The aerial surveillance only observed the men on the beach from moments before the handoff until the jet skis left the beach. No agent observed anyone exiting the Jeep before the handoff or approaching the Jeep afterward. Nor did any agent observe where the men on the beach went after the jet skis drove away or what was happening at the Jeep during the twenty minutes between the end of the handoff and the Jeep's approach to the Botany Bay gate. Moreover, there was no testimony about physical similarities between the men engaged in the handoff and the Jeep's occupants.

Even when considered alongside the above information, the wet and sandy items (shoes, towel, and floorboard) and the first gun that the agents spotted do not add up to a reasonable belief that the men engaged in the handoff were the same men stopped in the Jeep. It is unsurprising that people in a vehicle parked near a beach would have encountered sand and water. Plus, as the District Court noted, possession of a firearm is not illegal in the Virgin Islands, and no agent testified that anything about the firearm in the driver's seat pocket (a firearm that bore a serial number, unlike the firearm found during the search) was indicative of criminal activity.

Finally, as the District Court noted, even if the agents knew that the men who loaded up the jet skis on the beach were the same men found in the Jeep, that did not create reason to believe that contraband or evidence of a crime would be found in the Jeep given that the handoff to the jet skis appeared to be a one-way transaction.

In light of the above, the agents lacked probable cause to suspect that contraband or evidence of a crime would be found inside the Jeep. The District Court properly granted the motion to suppress.

*     *     *

For the foregoing reasons, we will affirm the District Court's order suppressing the firearm recovered from the Jeep's center console.